03C01-9805-CR-00165

IN THE CRIMINAL COURT OF TENNESSEE AT CHATTANOOGA
THE ELEVENTH JUDICIAL DISTRICT


STATE OF TENNESSEE             *
        Appellee,              *
                               *
vs.                            *    Case Nos. 175495,
                               *       175497
HAROLD WAYNE NICHOLS           *
        Appellant.             *

FILED
MAY - 3 1999
Clerk of the Courts
Rec'd by

September 13, 1989
TRANSCRIPT OF GUILTY PLEA
Volume One of One Volume

THE HONORABLE DOUGLAS A. MEYER, PRESIDING JUDGE


APPEARANCES


FOR THE APPELLEE:

            Gary Gerbitz, Esq.,
            District Attorney General, and
            Stephen Bevil, Esq.
            Assistant District Attorney General
            City and County Courts Building
            Chattanooga, Tennessee  37402


FOR THE APPELLANT:

            Hugh J. Moore, Jr., Esq., and
            Rosemarie Beverly, Esq., of
            Witt, Gaither & Whitaker
            1100 Sun Trust Bank Building
            Chattanooga, Tennessee  37402

IN THE CRIMINAL COURT OF TENNESSEE AT CHATTANOOGA
THE ELEVENTH JUDICIAL DISTRICT
DIVISION I

STATE OF TENNESSEE          *
      Appellee,          *
              *
vs.          *  Case Nos. 175495,
              *      175497
HAROLD WAYNE NICHOLS          *
      Appellant.          *

This cause came on to be heard and was
heard on the 13th day of September 1989, before the
Honorable Douglas A. Meyer, Judge, holding the Criminal
Court for Hamilton County, at Chattanooga, Tennessee,
and the following proceedings were had, to-wit:

        (Thereupon, the jury was duly selected,
        impaneled and accepted by both sides and
        sworn.)
        (Thereupon, other proceedings were reported
        but are not transcribed herein.)

        THE COURT:  All right.  For the reasons I
set out earlier, I am inclined to sustain the motion,
but at this time, then, the Court will have Mr. Nichols
come to the podium so that I can be sure that he is
freely and voluntarily of his own accord.

        Of course, Mr. Nichols, I know that you
understand your rights, that your attorneys have
explained to you your rights prior to your announcing

1    that you were entering pleas of guilty in the burglary

2    case and in the aggravated rape case in which you were

3    charged with aggravated rape by sexual penetration, but

4    I have to be sure that you do understand those rights,

5    not that I have to under -- have to do that, other than

6    to make sure that you cannot later attack this

7    conviction, that's the only reason I'm going into it,

8    not for the reasons announced by the attorney general.

9    I do not have to do it for that purpose. I could merely

10   accept your plea of guilty right now and find that you

11   are guilty, but I am going to inquire into it because I

12   want to make sure that this is a valid conviction that

13   cannot later be attacked.

14              THE DEFENDANT: Yes, sir.

15              THE COURT: You know, of course, you have

16   the right to trial by jury and we are in the jury

17   process right now. We've just sworn a jury to hear your

18   case.

19              THE DEFENDANT: Yes, sir.

20              THE COURT: And, of course, you had a right

21   to a speedy trial and we gave you a trial just as quick

22   as your attorneys were ready to try it. In fact, the

23   State wanted to try the cases earlier, but I felt that

24   with the gravity of the charges against you and the

25   number of charges against you, with a total of 13

1   victims, that your attorneys should be allowed as much
2   time as they needed to be prepared, but at all times
3   this Court has been prepared to give you a speedy trial.
4               THE DEFENDANT: Yes, sir.
5               THE COURT: And, of course, you understand
6   that we do have another case of yours set for trial in
7   November.
8               THE DEFENDANT: Yes, sir.
9               THE COURT: And that your murder trial is
10  set for December, the first part of December.
11              THE DEFENDANT: Yes, Your Honor.
12              THE COURT: So you do have two other cases
13  set for trial.
14              THE DEFENDANT: Yes, Your Honor.
15              THE COURT: Because we are trying to give
16  you your speedy trial right.
17              THE DEFENDANT: Yes, sir.
18              THE COURT: Of course, you have the right
19  to see, hear and confront the witnesses against you and
20  have your attorneys cross-examine the State witnesses.
21              THE DEFENDANT: Yes, Your Honor.
22              THE COURT: You understand that you would
23  be sitting at the counsel table with your attorneys
24  throughout the trial.
25              THE DEFENDANT: Yes, Your Honor.

1      THE COURT: And would be in a position to

2      where you could suggest questions to be used in

3      cross-examination of the State witnesses.

4      THE DEFENDANT: Yes, sir.

5      THE COURT: You understand also, of course,

6      that your right of confrontation is the right to have

7      eye contact with the witness if the witness cares to

8      look at you. You can look at the witness; the witness

9      does not have to look at you.

10      THE DEFENDANT: Yes, Your Honor.

11      THE COURT: You understand that?

12      THE DEFENDANT: Yes, Your Honor.

13      THE COURT: But you would be sitting in

14      position to where you could attempt to have eye contact

15      with the witnesses, because you do have the right to

16      confront the witnesses against you, and the reasoning

17      behind the right of confrontation is that time has

18      proven through hundreds of years that if an accused has

19      the right to face the accuser, that the truth is more

20      apt to come out.

21      THE DEFENDANT: Yes, Your Honor.

22      THE COURT: So you have that right of

23      confrontation, and the right to cross-examine, and you

24      can suggest questions, as I said, to your attorneys to

25      use.

5

1    Your attorneys, Ms. Beverly and Mr. Moore,

2    have an obligation, of course, to you to try to walk you

3    out of this courtroom free of this charge.

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  They can't do anything illegal,

6    dishonest or unethical in doing so, but they have an

7    obligation to use all their knowledge, training and

8    experience of putting the State to the burden and to the

9    test of proving your guilt beyond a reasonable doubt to

10   the satisfaction of the jury, and through careful, close

11   cross-examination of the State witnesses, they would try

12   to bring out things favorable to your defense, or at

13   least lessen the harmful effect of the testimony of the

14   witnesses against you.

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  And they could do that in

17   different ways.  They are experienced lawyers and they

18   know that, as an example, when the victim was on the

19   stand and the victim was testifying, that they would

20   have to be extremely careful in anything that they

21   cross-examine that victim about, because they would not

22   want to do anything that would offend the jury.  And

23   good trial lawyers can sense the presence of a jury,

24   they can sense when the jury is with them and agrees

25   with the line that they're taking; and they can also

6

1    sense when they've left the jury cold.  And you do have

2    some very experienced trial lawyers representing you.

3                    THE DEFENDANT:  Yes, sir.

4                    THE COURT:  And, of course, the State has

5    the burden of proving your guilt beyond a reasonable

6    doubt; no burden on you to prove your innocence.

7                    And the State would have to call witnesses

8    to the stand and the State was prepared to call the

9    victim to the stand to testify as to the burglary

10   charge, and they would have to prove that there was a

11   breaking and entering; that there was actual entry with

12   the intent to commit a felony therein, and the specific

13   felony in this particular burglary case was aggravated

14   rape was the intent, your intent; and they would have to

15   establish the breaking and entry with that purpose, and

16   they would call the victim to the stand to testify as to

17   that aspect of it.

18                   Also on the aggravated rape charges, they

19   would have to have the testimony of a witness of sexual

20   penetration against that person's will.  And, of course,

21   your attorneys, as I say, would have to very gingerly

22   cross-examine the victim.

23                   As far as the expert witnesses, they again

24   would have to be very careful about cross-examination of

25   the expert witnesses, and the State did intend to call a

1    fingerprint expert and also a serologist, and I would
2    imagine the serologist's testimony would involve your
3    blood type and the fact that a secretor -- I think
4    that's the term that's used -- where all of us secrete
5    blood into, or males secrete it into the semen to where
6    they could tell your blood type and the type of the
7    person who did attack the victim in this case, but your
8    attorneys would cross-examine them.

9              They would cross-examine the Red Bank
10   police officers who are listed as witnesses in the case
11   in an effort, as I say, to be sure or to test the
12   State's ability to prove all the essential elements of
13   the offense.

14             In addition, of course, if you had the
15   trial, if we continued the trial, you'd have the right
16   to have witnesses here on your own behalf, and any
17   witness that you needed to have here, any essential
18   witness, the Court would use its power to get those
19   witnesses here. If your attorneys requested their
20   presence, we'd get them here.

21             And if we have a trial, of course,
22   continued with the trial, you would have the right to
23   remain silent. You would not have to take the stand.
24   If you did not testify, in my instructions to the jury
25   at the end, I would have told them they could not

consider that for any purpose whatsoever against you.

Of course, if you elected to testify -- and you'd have every right to testify -- then you would have an obligation to tell the truth the same as any other witness. Defendants do not have the right to lie under oath. They must tell the truth same as other witnesses. And, of course, you'd be subject to cross-examination by the attorney general.

And, of course, we've already mentioned that you have the right to effective assistance of counsel. That's in trial preparation and actual trial.

Have Ms. Beverly and Mr. Moore talked to you often enough and long enough to answer any questions you might have about the charges against you?

THE DEFENDANT: Yes, Your Honor, they have.

THE COURT: Have they taken time to go over the charge with you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The specific charge where the offense is alleged to have occurred I believe on December the 28th of 1988 --

THE DEFENDANT: Yes, Your Honor.

THE COURT: -- involving the victim, Ms. Rozell?

THE DEFENDANT: Yes, Your Honor.

1          THE COURT:  They've gone over that with you

2     and have told you what the State's proof would be.

3               THE DEFENDANT:  Yes, Your Honor.

4               THE COURT:  Because through the process of

5     discovery, they have found out everything about the

6     State's case that you're entitled to know.

7               THE DEFENDANT:  Yes, sir.

8               THE COURT:  And have they related that to

9     you?

10              THE DEFENDANT:  Yes, Your Honor.

11              THE COURT:  Told you everything they know

12    about the case?

13              THE DEFENDANT:  You mean --

14              THE COURT:  What the witnesses would

15    testify to and all?

16              THE DEFENDANT:  Yes, Your Honor.

17              THE COURT:  And you've told them everything

18    you know about the, the matter?

19              THE DEFENDANT:  Yes, Your Honor.

20              THE COURT:  Now, backing up for a moment,

21    you know that they could not allow you to take the stand

22    and perjure yourself under oath?

23              THE DEFENDANT:  Yes, Your Honor.

24              THE COURT:  That in that situation, they

25    would have to move the Court to be permitted to withdraw

1   as counsel because they could not knowingly let you take
2   the stand and lie.
3                   THE DEFENDANT:  Yes, Your Honor.
4                   THE COURT:  Now, back to the, your rights,
5   as far as your attorney, you are satisfied with
6   everything they've done?
7                   THE DEFENDANT:  Yes, sir.  I have no
8   complaints about my attorneys.
9                   THE COURT:  You're not afraid of your
10  attorneys?
11                  THE DEFENDANT:  No, sir.
12                  THE COURT:  They're not putting any
13  pressure on you?
14                  THE DEFENDANT:  No, sir.
15                  THE COURT:  Is there anyone, any jailer or
16  any inmate in the jail or any police officer or anyone
17  at all who's putting pressure on you to get you to plead
18  guilty?
19                  THE DEFENDANT:  No, Your Honor.
20                  THE COURT:  From the news accounts, it
21  appears that you are married.
22                  THE DEFENDANT:  Yes, Your Honor.
23                  THE COURT:  You're, you're not doing this
24  because your spouse is putting any pressure on you?
25                  THE DEFENDANT:  No, sir.

1      THE COURT: You're not doing this because

2      of any feeling that you're trying to spare her?

3                  THE DEFENDANT: No, sir.

4                  THE COURT: Or any other member of your

5      family? Did you have your mother here yesterday?

6                  THE DEFENDANT: No, sir, my mother's

7      deceased.

8                  THE COURT: Your mother's deceased. Didn't

9      you have some people here yesterday?

10                 THE DEFENDANT: I'm not sure, Your Honor.

11     I don't believe so.

12                 THE COURT: Okay. Do you have other

13     relatives here in Chattanooga?

14                 THE DEFENDANT: My father.

15                 THE COURT: Your father? And he was not

16     present, I don't believe, yesterday.

17                 THE DEFENDANT: I don't believe so, Your

18     Honor.

19                 THE COURT: But you're not doing this to

20     spare anybody else's feelings?

21                 THE DEFENDANT: No, sir.

22                 THE COURT: Now, you know on this guilty

23     plea now that I am inquiring about, that you do not have

24     to incriminate yourself in it?

25                 THE DEFENDANT: Yes, Your Honor.

```
1                    THE COURT:  You understand that?

2                    THE DEFENDANT:  Yes, sir.

3                    THE COURT:  But from the proof that you

4       know that the State would introduce, do you believe the

5       jury would have found you guilty of burglary based on

6       the testimony of the witnesses?

7                    THE DEFENDANT:  Yes, Your Honor.

8                    THE COURT:  You know what they would

9       testify to, is that correct?

10                   THE DEFENDANT:  Yes, Your Honor.  I, we've

11      reviewed the evidence, the State has, and we know what

12      would have been --

13                   THE COURT:  And you believe the jury would

14      have found you guilty of burglary?

15                   THE DEFENDANT:  Yes, Your Honor.

16                   THE COURT:  Would the jury have found you

17      guilty of aggravated rape, sexual penetration?

18                   THE DEFENDANT:  Yes, Your Honor.

19                   THE COURT:  You believe they would have?

20                   THE DEFENDANT:  Yes, Your Honor.

21                   THE COURT:  Is that why you're entering

22      your plea of guilty?

23                   THE DEFENDANT:  Yes, Your Honor.

24                   THE COURT:  Any promises been made to you?

25                   THE DEFENDANT:  No, sir.
```

1                   THE COURT:  What do you think the

2  punishment is for burglary, first degree burglary that

3  you've entered a plea of guilty to?

4                   THE DEFENDANT:  I can't recall the exact

5  punishment for the burglary.

6                   THE COURT:  It's five to fifteen years.

7                   THE DEFENDANT:  Five to fifteen years.

8                   THE COURT:  Do you know what the punishment

9  is for aggravated rape?

10                  THE DEFENDANT:  Carries up to a life

11 sentence.

12                  THE COURT:  Twenty years to life.  I do not

13 know if you're a range 1 or a range 2 offender.  That

14 will come out at a sentencing hearing at a later time --

15                  THE DEFENDANT:  Yes, Your Honor.

16                  THE COURT:  -- whether or not you're range

17 1 or range 2.  My information, though, that knowledge

18 that I have from prior motions and all is that you have

19 other convictions for burglary or something in the past.

20                  THE DEFENDANT:  Yes, Your Honor.

21                  THE COURT:  So I'm not sure exactly of how

22 many convictions you have and whether or not you'd be

23 range 1 or range 2 or whether or not you were on parole

24 or probation or anything else, so if, if the punishment

25 is, on the aggravated rape, if it is as a range 1, then

```
1    I believe the Court would set the punishment 20 to 40
2    years.  If, on the -- if you're a range 2, I'll set the
3    punishment somewhere between 40 and life.
4                      On the burglary, it would be from 5 to 10
5    or 10 to 15 years is the punishment that you are facing
6    and would have faced if you'd gone on to trial and a
7    jury had heard the proof --
8                      THE DEFENDANT:  Yes, sir.
9                      THE COURT:  -- in the case.
10                     You know that by entering a plea of guilty
11   as you announced before the jury, that you would be
12   waiving any defense that you might have had to the
13   charge.
14                     THE DEFENDANT:  Yes, Your Honor.
15                     THE COURT:  And you know that these
16   convictions will be on your record forever.
17                     THE DEFENDANT:  Yes, Your Honor.
18                     THE COURT:  And you know that the State has
19   announced that they're going to use this conviction as
20   an aggravating circumstance to seek the death penalty if
21   the jury finds you guilty of murder --
22                     THE DEFENDANT:  Yes, Your Honor.
23                     THE COURT:  -- in the December trial.
24                     THE DEFENDANT:  Yes, sir.
25                     THE COURT:  Do you understand that?
```

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  And then if the jury finds you

3     guilty of murder of Karen Pullen at the December trial,

4     then the jury, at a second phase in that trial, a

5     sentencing hearing, after hearing additional proof, will

6     have to determine whether your punishment would be death

7     by electrocution or life imprisonment.

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  You understand that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  And that by pleading guilty,

12     you have given the State an aggravating circumstance

13     that they can use.

14          And you know, and I'm sure your attorneys

15     have explained to you, that before the jury can set

16     death by electrocution in that case, assuming that they

17     find you guilty, they would have to find the existence

18     of an aggravating circumstance -- which obviously you're

19     pleading guilty to one and there will be an aggravating

20     circumstance -- then they would have to consider any

21     mitigating circumstances at all.

22          And your attorneys at the sentencing phase,

23     if you're found guilty of murder in the first degree, at

24     the sentencing phase will offer whatever proof they may

25     have that would, could be considered in mitigation, and

1    then the jury would have to determine whether or not
2    there were any mitigating circumstances, and they would
3    have to find first that the aggravating circumstances
4    outweighed any mitigating circumstances before they
5    could fix death by electrocution.  But if they find that
6    the aggravating circumstances outweigh the mitigating
7    circumstances, I would charge them that -- or my charge
8    would tell them that they should set death by
9    electrocution.
10                   THE DEFENDANT:  Yes, sir.
11                   THE COURT:  Do you understand that?
12                   THE DEFENDANT:  Yes, sir.
13                   THE COURT:  And you understand that this is
14   just a preliminary to that.
15                   THE DEFENDANT:  Yes, Your Honor.
16                   THE COURT:  That the, all actions in all
17   your cases are leading up to the State seeking the death
18   penalty.
19                   THE DEFENDANT:  Yes, sir.
20                   THE COURT:  And that you've assisted them
21   or made their job easier by your entering your plea of
22   guilty today.
23                   THE DEFENDANT:  Yes, Your Honor.
24                   THE COURT:  Anything you want to tell me
25   about any of this?  Again, you do not have to say

| | |
|---|---|
| 1 | anything at all until -- that would incriminate you |
| 2 | until you talk to Mr. Moore or Ms. Beverly. |
| 3 | Did you want to confer with them before you |
| 4 | say anything else or do you want to say anything else? |
| 5 | THE DEFENDANT: No, sir, I don't believe I |
| 6 | do. |
| 7 | THE COURT: Do you have any question about |
| 8 | any of your rights? |
| 9 | THE DEFENDANT: No, sir. |
| 10 | THE COURT: Does the State have any, any |
| 11 | point that they would like for me to ask him about? |
| 12 | MR. GERBITZ: The only thing we refer to |
| 13 | the Court is the instructions in Mackey and request that |
| 14 | the Court take a factual recitation of the case. |
| 15 | THE COURT: Well, I will. I'll hear from |
| 16 | the State as far as the facts in just a moment. |
| 17 | All right. At this point, then, if you |
| 18 | would, recite the facts, some -- one of you recite what |
| 19 | the facts would be in this case. |
| 20 | MR. BEVIL: In the case he's pleading |
| 21 | guilty to, Your Honor, the State's proof would show that |
| 22 | on December the 12th -- I mean 27th, 1988, that Tammy |
| 23 | Rozell lived at 5224 Cheryl Lane in Red Bank; had gone |
| 24 | to her apart -- had gone to a movie at Four Squares |
| 25 | Theater in the Four Squares shopping center about 9:15. |

1    11:15, the movie was over, she returned home.

2          She had made a couple of trips to her

3 apartment on Cheryl Lane from her car taking things to

4 and from the apartment from her car. On one trip she

5 was facing the front door when someone came up behind

6 her, put a cord around her neck, she thought was a rope

7 at the time but later turned out to be an electrical

8 cord taken from an iron that she had there. The party

9 was later identified as Mr. Nichols.

10          Mr. Nichols forced her into the bedroom

11 where he told her at that time that -- she told him she

12 didn't have any money. She would testify that he said,

13 "I don't want your money. Do what I tell you or I'll

14 kill you."

15          At that point in time, he told her that he

16 was going to, used a four-letter word, her in the mouth.

17          As to this particular case, Your Honor, the

18 proof would show that she told him during this period of

19 time -- well, he, first of all, said, asked her to take

20 her clothes off. She apparently wasn't doing it fast

21 enough and he ripped the clothes off of her, ripped her

22 panties off. She told him she was having her period.

23 He hit her in the head, he hit her in the mouth, he hit

24 her several other times.

25          The doctor, Dr. Brian Glass would testify

1  that he found contusions on her lip, contusions on her
2  head, contusions on her back and contusions on her neck,
3  and that he found live sperm when he examined her.

4        Tammy Rozell would further testify that she
5  told him she was having her period, and he later, after
6  he got her clothes off of her and threw her down on the
7  bed, that he noticed that she had a tampon, which he
8  removed from her, and told her that she wasn't lying,
9  that she was, in fact, on the rag, where he proceeded to
10  go ahead and have forcible sexual vaginal intercourse
11  with her at that time.

12        The proof would further show, according to
13  her testimony, that he pulled his clothes up, left, told
14  her not to do anything, to lay still, and he left,
15  proceeded out the side door.

16        She waited for fear that he was still in
17  the neighborhood. She called the police.

18        Officer Phil Cassidy was the first officer
19  on the scene. He would testify that when he got there,
20  she was extremely nervous, upset, crying, in fact,
21  hysterical.

22        He talked to her, found out briefly what
23  happened. He found the iron on the floor, which we
24  would introduce. He found the cord on the floor, which
25  would be introduced. He found a back bedroom window

1    which had been opened, which is the, was the point of

2    entry where Mr. Nichols went into the apartment.

3                   Detective Dyer, Dan Dyer, detective

4    sergeant, Red Bank Police Department, would testify also

5    about taking her -- arriving on the scene, transporting

6    her to Erlanger Hospital for a doctor's examination,

7    rape kit, and where Dr. Brian Glass examined her there.

8                   The proof would further show, Your Honor,

9    that the testimony of Michael Van Zandt, serologist with

10   the Tennessee Crime Laboratory, would show that the rape

11   kit that was taken to him by the Red Bank Police

12   Department showed the slide taken, in fact --

13                  THE COURT: I said bleeder but it's

14   secretor is the way that the serologist proves or can

15   testify.

16                  MR. BEVIL: Well, he, the serologist would

17   just testify that on the rape kit, the slide taken, a

18   vaginal slide was taken and -- or swabs were taken and

19   placed on the slide and that examination of that slide

20   shows positive for sperm; that there was a blanket which

21   was removed from the bedroom which Tammy Rozell would

22   identify as being on the bed, was also taken by the Red

23   Bank Police Department to the lab. It was examined by

24   Mr. Van Zandt, and he would testify that sperm was also

25   found on the blanket or comforter.

1    Your Honor, the proof would further show

2    that on January the 5th, 1989, Detective Dan Dyer of the

3    Red Bank Police Department had a conversation with

4    Harold Wayne Nichols at East Ridge Police Department,

5    and in the early morning hours of the 6th of January

6    1989, he took a statement from Mr. Nichols that was

7    recorded on audio recording where Mr. Nichols admitted

8    that he raped Tammy, the party, Tammy Rozell, that he

9    just said that he was just driving by and saw her and

10   decided to rape her, that it was forcible, that he

11   admitted hitting her.

12   Later on on the same date, the proof would

13   show -- Detective Dyer would testify that later on that

14   same day, the proof would show that at the Chattanooga

15   Police Department, approximately 11:55 a.m., Mr. Nichols

16   again gave a statement, this time it was videotaped, in

17   which videotaped statement he admitted the rape of Tammy

18   Rozell; and that he admitted hitting her and he admitted

19   that he knew the location of it and where he parked the

20   car; that he had driven around her apartment a couple of

21   times, saw her coming and going from the apartment to

22   her car; that he parked on a road adjacent, which would

23   have been in the city of Chattanooga; that he went in

24   the back bedroom window; that he took the cord from the

25   iron, ripped it from the iron, and that he used the cord

1    to put it around Tammy Rozell's neck where he choked

2    her. The videotape would show him demonstrating to

3    Detective Sivley, who's actually the one who took the

4    tape, demonstrating to him exactly how he took the cord

5    and looped it around her neck and choked her with it.

6                    The proof would further show that his

7    statement in that videotape, that he was laughing, and

8    Detective Sivley asked him if it was funny, and he said,

9    "Well, it's not really funny what happened, but the

10   whole thing is sort of funny." And that would be the

11   tape.

12                   That would be the proof that the State

13   would introduce against Mr. Nichols.

14                   THE COURT: All right. Mr. Moore or Ms.

15   Beverly, does your client wish to respond to the -- or

16   do you care to respond to what the proof would be?

17                   MR. MOORE: Your Honor, on behalf of Mr.

18   Nichols, he entered a plea of not guilty to the, to --

19                   THE COURT: To 175431.

20                   MR. MOORE: -- to 175431, and, for the

21   record, would object to the mention, which I think the

22   attorney general withdrew in his recitation of facts,

23   concerning oral sex.

24                   THE COURT: No, I think it's proper for him

25   to mention about that, because under indictment 175495,

1      that, that is the factual situation of what occurred.

2               MR. MOORE: Well, we, we --

3               MR. GERBITZ: We didn't mention, we didn't

4      mention the oral sex in this plea of guilty.

5               THE COURT: Well, I think Mr. Bevil started

6      off by, He said a four-letter word. He didn't say a

7      four-letter Anglo Saxon word in the mouth.

8               MR. BEVIL: We, we -- it was a threat at

9      that time, Your Honor. It was part of the overall

10     threat. We did at that point in time withdraw it at

11     that point and move on to the other, as Mr. Moore says,

12     I withdrew it at that time and moved on to --

13              MR. MOORE: There are specific things we

14     might take issue with in that, details of Mr. Bevil's

15     recitation, but the fact remains, and Mr. Nichols will

16     tell you that he -- that we understand that would be the

17     State's proof, and Mr. Nichols is still ready to, based

18     upon the proof that he understands would be introduced

19     at trial, plead guilty to unlawfully and feloniously

20     engaging in sexual penetration with Tammy Rozell by the

21     use of force or coercion while he, the defendant, was

22     armed with a weapon, to-wit: a cord, thereby causing

23     personal injury to Tammy Rozell.

24              THE COURT: That's in case 175495.

25              MR. MOORE: Yes, Your Honor, he's

```
1    willing -- that's --
2                   THE COURT:  All right.  Mr. Nichols --
3                   MR. MOORE:  And the burglary.
4                   THE COURT:  And the burglary, 175497.
5                   MR. MOORE:  Right, Your Honor.
6                   THE COURT:  Mr. Nichols?
7                   THE DEFENDANT:  Yes, Your Honor.
8                   THE COURT:  How old are you?
9                   THE DEFENDANT:  I'm 28 year old.
10                  THE COURT:  How far did you go in school?
11                  THE DEFENDANT:  Twelfth grade.
12                  THE COURT:  And you can read?
13                  THE DEFENDANT:  Yes, Your Honor.
14                  THE COURT:  Do you read newspapers and
15   magazines?
16                  THE DEFENDANT:  Yes, Your Honor.
17                  THE COURT:  Do you read books?
18                  THE DEFENDANT:  Yes, Your Honor.
19                  THE COURT:  Do you understand what you
20   read?
21                  THE DEFENDANT:  Yes, Your Honor.
22                  THE COURT:  Have you read anything about
23   law?
24                  THE DEFENDANT:  Briefly, Your Honor.
25                  THE COURT:  Have you read about the law
```

involving rape and burglary?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you understand it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Without telling me what your attorneys said or you said to your attorneys, you did discuss with them what you knew about the legal terminology of rape and burglary?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You do not appear to be under the influence of alcohol or any kind of drug today?

THE DEFENDANT: No, sir.

THE COURT: Of course, I realize you've been in custody for some time, but occasionally contraband does find its way into a jail or any secure facility, but you do not appear to be that way.

THE DEFENDANT: No, sir.

THE COURT: You appear to be alert and understand what is going on.

THE DEFENDANT: Yes, Your Honor.

THE COURT: In cases 175497, wherein you're charged with burglary, and 175495, wherein you're charged with aggravated rape, the Court first finds that Harold Wayne Nichols is freely and voluntarily of his own accord waiving his right to a trial by jury and

1    entering his plea of guilty.

2                THE DEFENDANT:  Yes, sir.

3                THE COURT:  The Court further finds that

4    based on the statement by the attorney general of what

5    the proof would be, the Court finds that you are guilty

6    of burglary in the first degree; that you did break and

7    enter into the home of Tammy Rozell on December the

8    27th, 1988; that you did unlawfully and feloniously

9    break and enter into there with the intent to commit a

10   felony, to-wit: aggravated rape.  Her testimony about

11   what you said to her after she discovered you in there

12   and after you had placed the cord around her neck showed

13   your intent to commit a felony, aggravated rape.

14                And, of course, her testimony would show

15   that it was by night, that she had been to the Four

16   Squares shopping center earlier that evening before

17   going home, and it was at night, so all of the factors

18   or all of the facts that have to be proved to establish

19   your guilt of the offense of burglary, first degree

20   burglary are met by the statement of the attorney

21   general of what the proof would be, and, of course, I

22   have, as I said, discussed with you your rights and the

23   fact that you understand what the State's witnesses

24   would testify.

25                In the case 175495, wherein you were

1   charged with unlawfully and feloniously engaging in
2   sexual penetration with Ms. Rozell on December the 27th,
3   1988, by the use of force and coercion while you were
4   armed with a weapon, to-wit: a cord, and that you caused
5   personal injury to Tammy Rozell, the Court finds that
6   there is a basis for a finding of guilt in that case;
7   that you did cause personal injury to her; that you did
8   use a cord as a weapon by attaching it around her neck;
9   that you did engage in sexual penetration, and from the
10  statement by the attorney general, even though he
11  stopped before saying that she would testify that you
12  did perform or compel her to perform fellatio on you,
13  that there was fellatio, that you are guilty of sexual
14  penetration by fellatio, and that also that you are
15  guilty of sexual penetration by sexual intercourse or
16  vaginal, so the Court finds that the facts show that you
17  are guilty of two types of sexual penetration on
18  December the 27th, 1988.  The Court, therefore, accepts
19  your pleas of guilty.  The Court finds you are guilty of
20  burglary in the first degree, and the Court finds that
21  you are guilty of aggravated rape.

22              The Court will have a sentencing hearing at
23  a later date to determine the range, whether you're a
24  range 1 or range 2 and to set the punishment.  I will
25  not have the sentencing hearing until all the other

cases are concluded, because I cannot sentence you part,
a part of a person. I have to sentence the whole
defendant, and I'll have to wait until I hear all of the
proof.

THE DEFENDANT: Yes, sir.

THE COURT: I might say that from what the
allegations contained in the indictment and what I have
heard so far today, that the Court would probably find
that you are, based on this, a dangerous offender. If
you're found guilty as charged in all of these cases,
you would be found to be a dangerous offender and would,
under the standards set out in Gray versus the State, be
subject to consecutive sentencing.

THE DEFENDANT: Yes, Your Honor.

THE COURT: And that would be in the
burglary and the aggravated rape case.

THE DEFENDANT: Yes, Your Honor.

THE COURT: But again, I will not make that
decision until the sentencing hearing. At that time, I
will have the benefit of the testimony in all the other
cases. I'll have the benefit of a presentence report,
and then I will listen to any witnesses that you may
call, I'll listen to anything you want to say, I will
listen to any witnesses that the State may call, I will
listen to the attorneys for the State, I will listen to

1    your attorneys, then I will apply the guidelines set out

2    in the sentencing act in fixing your punishment for

3    these cases that you have pled guilty to today, and any

4    other cases in which you are found guilty or plead

5    guilty to in the future.

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Any question about any of this,

8    because this is your day in court on this case?

9              THE DEFENDANT:  I have no further

10   questions.

11             THE COURT:  All right.  You have pled not

12   guilty in case 175431, and your attorney has asserted

13   the defense of double jeopardy.  The Court sustains that

14   motion in case 175431.

15             And, of course, the State has 30 days in

16   which to perfect an appeal.

17             MR. GERBITZ:  Your Honor, may I make a

18   statement for the record?

19             THE COURT:  Yeah.  Sure.  He, the attorney

20   general wishes to make a statement for the record.

21             MR. GERBITZ:  Your Honor, at this time it's

22   my understanding that the Court has dismissed the charge

23   that deals with the fellatio, is that correct?

24             THE COURT:  Right, that's 175431.

25             MR. GERBITZ:  All right.  For the purpose

1    of the record, we'd like to state that we are prepared
2    and ready at this time to try that case and proceed with
3    the jury.  We understand it has been dismissed.
4              We also would like, for the purpose of the
5    record, for it to reflect that a factual situation was
6    given to the Court that included the vaginal rape of
7    Tammy Rozell, and that the factual situation did not
8    include, as far as the State is concerned, did not
9    include the fellatio.  That's for the purpose of the
10   record, just for the purpose of appeal.
11             THE COURT:  Well, for the purpose of the
12   record, though, obviously it did also include, the
13   factual situation also did include oral sex.
14             MR. GERBITZ:  As we say, that's the Court's
15   interpretation, but as far as the State is concerned,
16   the factual situation as stated --
17             THE COURT:  Merely because the State
18   doesn't offer that doesn't mean it does not exist, and
19   the Court finds that it did exist.
20             And for the benefit of the victim, the
21   victim should know that the State -- the Court has found
22   that this man is guilty of, of sexual penetration by
23   fellatio and sexual penetration by sexual intercourse,
24   but the Court has ruled that that is one offense.
25             MR. GERBITZ:  The only purpose, for the

1  record, just for the State's perfection of appeal, is

2  that our factual situation stated to the Court did not

3  include that.

4            THE COURT:  Okay.

5            MR. GERBITZ:  And we except to the Court's

6  ruling on the dismissal of the charge.

7            THE COURT:  All right.  So you have 30 days

8  to perfect an appeal.

9            MR. GERBITZ:  Thank you.

10           THE COURT:  Anything else?

11           MR. MOORE:  Not from the defense, Your

12  Honor.

13  END OF REQUESTED PROCEEDINGS.

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE

I, the undersigned Abigail M. Pearce,

Official Court Reporter for the Eleventh Judicial

District of the State of Tennessee, do hereby certify

that the foregoing is a true, accurate and complete

transcript, to the best of my knowledge and ability, of

all the proceedings had and evidence introduced in the

trial of the captioned cause, relative to appeal, in the

Criminal Court for Hamilton County, Tennessee, on the

13th day of September 1989.

I do further certify that I am neither of

kin, counsel nor interest to any party hereto.

_December 2_ 19_97_

_Abigail M Pearce_

Official Court Reporter

State of Tennessee