IN THE CRIMINAL COURT OF TENNESSEE AT CHATTANOOGA
THE ELEVENTH JUDICIAL DISTRICT

STATE OF TENNESSEE          *
      Appellee,          *
                  *
vs.          *   Case No. 175433
                  *
HAROLD WAYNE NICHOLS          *
      Appellant.          *


October 24, 1989
TRANSCRIPT OF GUILTY PLEA
Volume One of One Volume

THE HONORABLE DOUGLAS A. MEYER, PRESIDING JUDGE


APPEARANCES


FOR THE APPELLEE:

        Stephen Bevil, Esq.
        Assistant District Attorney General
        City and County Courts Building
        Chattanooga, Tennessee  37402


FOR THE APPELLANT:

        Hugh J. Moore, Jr., Esq., and
        Rosemarie Beverly, Esq., of
        Witt, Gaither & Whitaker
        1100 Sun Trust Bank Building
        Chattanooga, Tennessee  37402

IN THE CRIMINAL COURT OF TENNESSEE AT CHATTANOOGA
THE ELEVENTH JUDICIAL DISTRICT
DIVISION I

STATE OF TENNESSEE        &ast;
       Appellee,        &ast;
                       &ast;
vs.                  &ast;    Case No. 175433
                       &ast;
HAROLD WAYNE NICHOLS        &ast;
       Appellant.        &ast;


This cause came on to be heard and was heard on the 24th day of October 1989, before the Honorable Douglas A. Meyer, Judge, holding the Criminal Court for Hamilton County, at Chattanooga, Tennessee, and the following proceedings were had, to-wit:

THE COURT: All right. The first case on the docket is Case Number 175433, State versus Harold Wayne Nichols, in which Mr. Nichols is charged with aggravated rape. How does Mr. Nichols plead to that indictment?

THE DEFENDANT: I plead guilty, Your Honor.

THE COURT: In case 175435, State versus Harold Wayne Nichols, wherein Mr. Nichols is charged with felonious assault with intent to commit first degree murder, how does Mr. Nichols plead?

THE DEFENDANT: I plead not guilty, Your Honor.

THE COURT: In case 175442, State versus

1   Harold Wayne Nichols, in which you're charged with grand

2   larceny, how does Mr. Nichols plead to that indictment?

3               THE DEFENDANT:  I plead guilty to petit

4   larceny, Your Honor.

5               THE COURT:  In case 175490, State versus

6   Harold Wayne Nichols, in which Mr. Nichols is charged

7   with first degree burglary, how do you plead to that

8   indictment, Mr. Nichols?

9               THE DEFENDANT:  Plead guilty, Your Honor.

10              THE COURT:  All right.  Mr. Nichols, before

11  the Court could accept your pleas of guilty, the Court

12  will have to be sure that you understand what you are

13  doing.

14              MR. MOORE:  Want us to come around, Your

15  Honor?

16              THE COURT:  No, I believe, since I'm going

17  to be speaking a little while, it might be better if Mr.

18  Nichols sat in the center to where the microphone could

19  pick up his answers, and the attorneys and Mr. Nichols

20  could remain seated, because I do want to be sure that

21  we cover everything, and I believe people think better

22  sometimes when they are comfortable and are sitting.

23              And, Ms. Rogers, if you have any problem

24  about the voices, then give me a signal.

25              First, though, before I go into that, Mr.

1    Bevil, on behalf of the State, Mr. Nichols has pled not

2    guilty to assault, felonious assault with intent to

3    commit murder in the first degree, and guilty to a

4    lesser included offense of petit larceny in the case

5    where he's charged with grand larceny.

6              MR. BEVIL:  Your Honor, let me say, we have

7    had discussions, of course, with Mr. Moore and Ms.

8    Beverly in reference to what might possibly happen this

9    morning, but as Your Honor well knows, the defendant has

10   a right, even at the last moment, to change his mind,

11   and until we got here this morning, we didn't know for

12   sure, absolutely for sure that this is what's going to

13   happen, although we felt like it might possibly be and

14   that's what they'd indicated to us.

15              I will say we have done extensive research

16   in this matter, Your Honor.  As to the felonious assault

17   charge, there was a separate indictment, but there are

18   cases that go both ways as to whether or not this would

19   be a separate incident or a separate crime, or whether

20   it would be the aggravating circumstances since it

21   occurred during one incident and one period of time,

22   whether it would be a separate trial.  There are cases

23   that go both ways.

24              Rather than go through a trial on that

25   particular issue, a risk of raising some assignments of

4

| | |
|---|---|
| 1 | error, we felt like in light of his acknowledgement and |
| 2 | plea in the aggravated rape, which is the most serious |
| 3 | of the charges, we feel like that this would be the best |
| 4 | thing for everybody concerned, especially sparing the |
| 5 | victim in this case from having to go through the |
| 6 | testimony and go through a trial. |
| 7 | As to the petit larceny case, Your Honor, |
| 8 | we feel like again there's a, some equivocation over the |
| 9 | amount, since that is of the charges -- of all the |
| 10 | charges that he has facing him in these cases, that's |
| 11 | the, I guess the less serious of all the charges, and |
| 12 | the difference would be a difference of 3 to 10 years or |
| 13 | 1 to 5 years. We feel like, again, it wouldn't be, it |
| 14 | wouldn't be to the victim's interest to go through a |
| 15 | trial in order to determine whether it's grand larceny |
| 16 | or petit larceny, and since he is willing to plead |
| 17 | guilty to petit larceny, we're going to ask the Court to |
| 18 | accept that plea. |
| 19 | And in light of the, as I've stated about |
| 20 | the assault with intent to commit murder, another |
| 21 | question in that would be whether or not there was |
| 22 | actually an intent to commit first degree murder or |
| 23 | second degree murder, which Your Honor knows there's a |
| 24 | big difference in punishment there. So we're going to |
| 25 | move to dismiss that charge in light of everything that |

1    I've stated and in light of his pleas to the other

2    charges.

3                    THE COURT:  All right.  Now, Mr. Nichols,

4    of course, I addressed you I guess it was a month ago

5    about your rights, and even though you entered a plea of

6    guilty to aggravated rape at that time, you know that

7    that does not affect this case, that you still have the

8    right to plead not guilty in this case, or these cases,

9    and you do have the right to a trial by jury in these

10   cases.  Of course, you have a right to a speedy trial,

11   and we do have this, these cases set for trial today,

12   the jurors are available, everything is ready.  The

13   State is ready for trial today, is that correct, Mr.

14   Bevil?

15                   MR. BEVIL:  That's correct, Your Honor.

16                   THE COURT:  Okay.  And I believe the

17   defense is ready to try the case, is that right, Mr.

18   Moore or Ms. Beverly?

19                   MR. MOORE:  Yes, Your Honor.

20                   THE COURT:  So the requirement of a speedy

21   trial has been met and your, you will have to freely and

22   voluntarily of your own accord waive that right if you

23   do not want a trial by jury, and to be sure that you

24   understand that, you know you do have the right to see,

25   hear and confront the witnesses against you and have Mr.

1    Moore and Ms. Beverly cross-examine the State witnesses,

2    and the State would have to prove all the essential

3    elements of these offenses to the satisfaction of the

4    jury.

5              To prove aggravated rape, of course, the

6    State would have to prove that there was a sexual

7    penetration, an unlawful sexual penetration of the

8    victim, accompanied by force or coercion, and that

9    bodily injury did occur to the victim. And, of course,

10   aggravated rape carries 20 years to life, am I correct,

11   Mr. Bevil?

12             MR. BEVIL: Yes, sir.

13             THE COURT: Twenty to life. That would be

14   what you would be facing in the aggravated rape case.

15             As I say, the State, even though, even if

16   you know you're guilty of this charge, you have the

17   right to plead not guilty and put the State to the

18   burden of proving your guilt, because you have a

19   presumption of innocence. No matter how reprehensible

20   this charge is that you're charged with, you still have

21   the right to a trial by jury and you have the

22   presumption of innocence. The State must overcome that

23   to the satisfaction of 12 jurors, 12 of your peers.

24             THE DEFENDANT: Yes, sir, I understand

25   that.

1   THE COURT: And when the State would call

2   witnesses to the stand, it would be up to your

3   attorneys, through careful, close cross-examination to

4   try to bring out things favorable to your defense or

5   lessen the harmful effect of the testimony against you.

6           You know that Mr. Moore and Ms. Beverly

7   have an obligation to you to try to walk you out of this

8   courtroom free of this charge.

9           THE DEFENDANT: Yes, Your Honor.

10          THE COURT: They can't do anything illegal,

11  dishonest or unethical, they couldn't put on perjured

12  testimony or anything of that nature, but they have to

13  use all of their knowledge, training and experience to

14  try to seek your acquittal --

15          THE DEFENDANT: Yes, sir. I understand.

16          THE COURT: -- of these charges.

17          And, of course, if we had a trial, you'd be

18  sitting at the counsel table with them throughout the

19  trial. In the last case, you were sitting with them

20  during the jury selection process and I observed you

21  consulting with them, and, of course, you would have

22  that right in any trial --

23          THE DEFENDANT: Yes, sir.

24          THE COURT: -- to consult with your

25  attorneys in the exercise of challenges for cause or

8

1    peremptory challenges that you would have.  And you did

2    do that in the last trial, is that correct?

3                    THE DEFENDANT:  Yes, sir.

4                    THE COURT:  You participated in that

5    selection with them?

6                    THE DEFENDANT:  Yes.

7                    THE COURT:  And, then, of course, after a

8    jury is selected, the attorneys for the State and your

9    attorneys would have an opportunity to make opening

10   statements to the jury to explain what the case is about

11   so that the jury would understand the case and the proof

12   as it unfolded.

13                   And after both sides make an opening

14   statement, then the State would call witnesses to the

15   stand.  And, again, you'd be sitting with your attorneys

16   during the testimony of the State witnesses to where you

17   could consult with them, suggest questions to them that

18   they could use during cross-examination.  You would have

19   that right of confrontation.  You'd be able to eyeball

20   the witnesses against you.  You'd be sitting at the

21   counsel table, and, of course, the witnesses would be at

22   the witness stand where the microphone is and you could

23   see them eye to eye.

24                   THE DEFENDANT:  Yes, sir.

25                   THE COURT:  And you have the right to

1  confront them and to look at them, but they don't have

2  to look at you.

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  There's no way that this Court

5  can require them to face you.  They do not have to look

6  at you.

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  But you have the right to look

9  at them and confront them.

10          Any question about that?

11          THE DEFENDANT:  No, sir.  I understand all

12  that.

13          THE COURT:  If the State failed to present

14  proof of all the essential elements, then your

15  attorneys, at the close of their proof, would move for a

16  directed verdict of acquittal.  If I sustain their

17  motion, that'd be the end of the case.

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Of course, if I overrule their

20  motion, then you'd have the opportunity to call

21  witnesses on your own behalf.

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  Would not have to put on any

24  proof and the burden would not shift to you, but you

25  would have that opportunity to call witnesses to the

1   stand if you wanted to.

2                   And, of course, you have the right to use

3   the power of this Court to get your witnesses here by

4   subpoenaing the witnesses, and during the course of the

5   trial, if some witness -- if it became apparent that

6   some witness was needed, then we would issue a subpoena

7   for them instantly so that the sheriff would go out and

8   bring those witnesses in.

9                   THE DEFENDANT:  Yes, sir.

10                  THE COURT:  And, of course, you would have

11  the right to testify in your own behalf.

12                  THE DEFENDANT:  Yes, sir.

13                  THE COURT:  Of course, if you elected not

14  to testify, I would instruct the jury they couldn't

15  consider that for any purpose whatsoever against you.

16  If you took the stand, then they could cross-examine you

17  about your prior convictions.

18                  THE DEFENDANT:  Yes, sir.

19                  THE COURT:  Including the case that you

20  pled guilty to last month.

21                  THE DEFENDANT:  Yes, sir.

22                  THE COURT:  If they did so, if the State

23  cross-examined you about prior convictions, then I would

24  instruct the jury they could consider that only as to

25  your credibility as a witness, not for any other

1    purpose.

2              Of course, if you elected to testify, you'd

3    have to tell the truth same as any other witness.

4              THE DEFENDANT:  Yes, sir.

5              THE COURT:  You would not have the right to

6    lie under oath.  There's no right for any defendant to

7    lie under oath.  Some individuals seem to think that

8    they do have that right, maybe it's the law of survival

9    or something, but that right does not exist.  You'd have

10   to tell the truth if you testify, and you'd be subject

11   to cross-examination by the attorney general.

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  At the conclusion of all the

14   proof, of your proof, of course, the State would have

15   the opportunity to call witnesses in rebuttal to any

16   proof that was introduced by you or your attorneys in

17   your defense, and, of course, at the end of the State's

18   rebuttal proof, you and your attorneys could call

19   surrebuttal witnesses who would be limited, of course,

20   to what was brought out by the defense -- I mean by the

21   State in their rebuttal.

22             At the conclusion of all the proof, the

23   attorney for the State would make an opening statement

24   to the jury, a summation, be followed by your attorneys,

25   and then, of course, the State would have the right to

close. Since the burden of proof is on them, they have

that right under the law to close.

And, of course, the State would be urging

the jury to find you guilty.

THE DEFENDANT: Yes, sir.

THE COURT: And, of course, as I indicated,

if they found you guilty of any of these offenses, then,

of course, later the Court would have to set the

punishment. The jury would not set any punishment in

these cases.

After the attorneys would have the

opportunity to sum up with the jury, then, of course,

the Court would charge the jury as to the law, and your

attorneys would have the opportunity, both before and

after the Court's charge, to suggest charges or

instructions that they would want the jury to hear.

And, of course, the State would have that same

opportunity. And then, of course, the jury would retire

to deliberate.

Any question about that procedure?

THE DEFENDANT: No, sir.

THE COURT: About your right to a trial by

jury, do you have any question about that at all?

THE DEFENDANT: No, sir, I understand my

rights.

```
 1                    THE COURT:  And about the right to use the

 2          power of the Court to get your witnesses here.

 3                    THE DEFENDANT:  Yes, sir.

 4                    THE COURT:  Your right to remain silent.

 5                    THE DEFENDANT:  Yes, sir.

 6                    THE COURT:  And also, as we discussed last

 7          time, you do have the right to effective assistance of

 8          counsel.

 9                    THE DEFENDANT:  Yes, sir.

10                    THE COURT:  Are you satisfied the way that

11          Mr. Moore and Ms. Beverly represented you?

12                    THE DEFENDANT:  Yes, sir, I am.

13                    THE COURT:  You know that they're both very

14          able, intelligent, articulate attorneys.

15                    THE DEFENDANT:  Yes, sir.

16                    THE COURT:  And they've both indicated to

17          you that they will try this case if that's what you

18          want, is that correct?

19                    THE DEFENDANT:  That's correct.

20                    THE COURT:  They haven't put any pressure

21          on you to get you to plead guilty?

22                    THE DEFENDANT:  No, sir.

23                    THE COURT:  Has any jailer put any pressure

24          on you?

25                    THE DEFENDANT:  No, sir.
```

14

1             THE COURT:  Any detective or police

2     officer?

3             THE DEFENDANT:  No, sir.

4             THE COURT:  Anyone from the attorney

5     general's office?

6             THE DEFENDANT:  No, sir.

7             THE COURT:  Anyone at all?

8             THE DEFENDANT:  No, sir.

9             THE COURT:  Has anyone told you not to tell

10    me anything?

11            THE DEFENDANT:  No, Your Honor.

12            THE COURT:  No one's indicated that you'd

13    make me mad if you told me something?

14            THE DEFENDANT:  No, sir.

15            THE COURT:  Your attorneys have told you to

16    answer my questions freely if you cared to?

17            THE DEFENDANT:  Yes, sir.

18            THE COURT:  Of course, you do not have to

19    make any incriminating statement to me during this

20    guilty plea hearing.

21            THE DEFENDANT:  Yes, sir.

22            THE COURT:  You do not have to incriminate

23    yourself, even at this hearing.

24            THE DEFENDANT:  Yes, sir.

25            THE COURT:  And before you answer any

1    question, of course, you would have the right to consult

2    with your attorneys.

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  Do you know what the State's

5    proof would be in this case?

6              THE DEFENDANT:  Yes, sir, I do.

7              THE COURT:  Your attorneys have advised you

8    of what the State witnesses would testify to?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Of course, during a discovery

11   process, of course, both sides are entitled to know what

12   the other side's proof would be about.  At one time we

13   had what we used to call trial by ambush where either

14   side would try to surprise the other side with some type

15   of evidence or proof that they would catch him off

16   guard, but we no longer have trial by ambush.  Both

17   sides are entitled to know what the case is about, which

18   is really in keeping with what the whole purpose of the

19   criminal justice system is, which is to seek the truth.

20             Have your attorneys talked to you often

21   enough and long enough to answer any questions you might

22   have?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  Have they left undone anything

25   you wanted them to do?

```
1                    THE DEFENDANT:  No, sir.

2                    THE COURT:  You're not under the influence

3       of alcohol or any kind of drug?

4                    THE DEFENDANT:  No, sir.

5                    THE COURT:  Are you taking any kind of

6       medication?

7                    THE DEFENDANT:  No, sir.

8                    THE COURT:  How long have you been locked

9       up?

10                   THE DEFENDANT:  Since January, Your Honor.

11                   THE COURT:  Have you had occasion to have

12      any visits from any family members?

13                   THE DEFENDANT:  Yes, sir.

14                   THE COURT:  All right.  So you've had

15      opportunity to talk with them also --

16                   THE DEFENDANT:  Yes, sir.

17                   THE COURT:  -- in addition to your

18      attorneys?

19                   THE DEFENDANT:  Yes, sir.

20                   THE COURT:  Is there anything else that you

21      think I ought to know before I accept your plea of

22      guilty?

23                   THE DEFENDANT:  Nothing I can think of,

24      Your Honor.

25                   THE COURT:  You know that if I accept your
```

1    plea of guilty, it becomes a conviction --

2                THE DEFENDANT:  Yes, Your Honor.

3                THE COURT:  -- the same as if a jury found

4    you guilty?

5                THE DEFENDANT:  Yes, sir.

6                THE COURT:  And you know that this is your

7    day in court on these charges?

8                THE DEFENDANT:  Yes, sir.

9                THE COURT:  That it's not going to be

10   resolved in any other court at some later date; this is

11   your day?

12               THE DEFENDANT:  That's correct.

13               THE COURT:  And that from this point on,

14   once I accept the plea of guilty and pronounce sentence,

15   that it becomes a conviction.

16               THE DEFENDANT:  Yes, sir.

17               THE COURT:  And that from that point on,

18   there'll be no further discussion of guilt or innocence.

19               THE DEFENDANT:  I understand that.

20               THE COURT:  And you also know that the

21   State intends to use this conviction, along with the

22   last conviction last month, as an aggravating

23   circumstance in the trial in which you're charged with

24   murder in the first degree.

25               THE DEFENDANT:  Yes, sir.

1        THE COURT: And which the State has

2 announced that they are going to seek the death penalty.

3        THE DEFENDANT: Yes, sir.

4        THE COURT: And you know that under the

5 Tennessee law, if the jury finds you guilty in that case

6 which is now set for trial in February, if they find you

7 guilty of murder in the first degree, then we will have

8 a second phase of that hearing, and in that, that would

9 be the sentencing phase and the jury would hear further

10 proof from the State of aggravating circumstances.

11       Of course, your attorneys in that phase of

12 the trial would again cross-examine all State witnesses

13 in an effort to bring out things favorable to you, or

14 lessen the harmful effect of the testimony against you.

15 They would try to bring out things that were in

16 mitigation, because the ultimate question the jury has

17 to decide is whether or not aggravating circumstances

18 exist. If they find aggravating circumstances exist,

19 whether or not there are any mitigating circumstances,

20 and if there are mitigating circumstances, whether or

21 not the aggravating circumstances outweigh the

22 mitigating circumstance.

23       If they find they out -- the aggravating

24 circumstances outweigh the mitigating, then their

25 penalty shall be death by electrocution.

1      THE DEFENDANT: Yes, sir.

2      THE COURT: And you know that this plea of

3  guilty today is an aggravating circumstance --

4      THE DEFENDANT: Yes, sir.

5      THE COURT: -- that will be used against

6  you.

7      THE DEFENDANT: Yes, sir.

8      THE COURT: Any question about that?

9      THE DEFENDANT: No, sir, Your Honor.

10     THE COURT: Of course, today you really

11 only have two choices: One is either continue the trial

12 where we start the jury selection and let the jury

13 determine guilt or innocence, and up to this point

14 there's no reason why we still cannot do that.

15     THE DEFENDANT: Yes, sir.

16     THE COURT: Because the jury is outside of

17 the hearing of this Court, cannot hear what's going on

18 in here. You have made no admissions in this, this

19 hearing. Of course, from the earlier hearing, I do know

20 that you have made a confession to the police in this

21 case.

22     THE DEFENDANT: Yes, sir.

23     THE COURT: If the jury heard the proof in

24 this case, the proof as you have been told it would be

25 by your attorneys, do you believe that there is a basis

1    on which a jury could find you guilty in this case?

2                    THE DEFENDANT:  Yes, Your Honor, I do.

3                    THE COURT:  And you realize that this will

4    remain on your record forever?

5                    THE DEFENDANT:  Yes, sir.

6                    THE COURT:  Any defense you may have had to

7    this charge or these charges of aggravated rape, petit

8    larceny and first degree burglary will be waived by your

9    plea of guilty.

10                   THE DEFENDANT:  Yes, sir.

11                   THE COURT:  Any question you've got about

12   any of this?

13                   THE DEFENDANT:  No, sir.

14                   THE COURT:  Anything you want to say?

15                   THE DEFENDANT:  Not at this time, Your

16   Honor.

17                   THE COURT:  All right.  I mentioned the

18   punishment for aggravated rape was 20 years to life.

19   Felonious assault with intent to commit murder in the

20   first degree -- let me be sure of the exact.

21                   All right.  Assault with intent to commit

22   murder in the first degree where bodily injury occurs

23   carries five to life.  As a range 1, it's 5 to 32 years.

24   As a range 2, it'd be 33 years to life.

25                   Of course, also we have to deal with the

1  situation that after November the 1st, the law changes

2  as to punishment. And, of course, the punishment that

3  the Court can set in this case would be different

4  possibly than the punishment that the Court will set in

5  the first case where you pled guilty to aggravated rape.

6              THE DEFENDANT: Yes, sir.

7              THE COURT: Under the law though, you

8  cannot be punished more. You as a defendant would have

9  the right to whichever is lesser punishment, whether

10  under the old law or the new law. And on some cases,

11  the new law provides greater penalty for more serious

12  offenses and less punishment for less severe, and it's

13  possible in this case -- and I did not look, but, Mr.

14  Bevil, I believe this is one where the punishment is

15  more on aggravated rape?

16              MR. BEVIL: The punishment would be 15 to

17  60 years, Your Honor.

18              THE COURT: Yeah. So, well, it's --

19  actually it's about the same then.

20              And, of course, first degree burglary

21  carries 5 to 15 years; and grand larceny, of course,

22  would carry 3 to 10 years; as Mr. Bevil pointed out,

23  petit larceny carries 1 to 5 years.

24              He does have the prior felonies of several

25  years ago, and now this conviction. Is he a range 2

```
1    offender --
2                    MR. BEVIL:  Yes.
3                    THE COURT:   -- at this time?
4                    And, of course, under the new law it would
5    be range 1, 2, 3 or career.  I don't believe that he
6    qualifies for career at this point.
7                    Anything else that you'd like to say, Mr.
8    Nichols?
9                    THE DEFENDANT:  No, sir.
10                   THE COURT:  Anything, Mr. Moore or Ms.
11   Beverly, that you would like to state?
12                   MR. MOORE:  No, Your Honor.
13                   THE COURT:  Anything, Mr. Bevil?
14                   MR. BEVIL:  I didn't know if Your Honor
15   wanted at this time --
16                   THE COURT:  Yeah.
17                   MR. BEVIL:  -- a synopsis of the proof.
18                   THE COURT:  Right.  I believe, though, do
19   you think we've covered everything we need to as far as
20   his rights are concerned?  Anything that I have not
21   covered?
22                   MR. BEVIL:  I can't think of any.
23                   THE COURT:  Okay.  All right.  At this
24   time, Mr. Bevil, if you would state what the proof would
25   be if we had a trial.
```

MR. BEVIL: Your Honor, the State's proof basically would be the State would call the victim, Ms. Susan Tate in this case, who would testify as follows: That approximately 3, a little after 3 a.m. on the morning of January the 3rd, that she had been to some friends' house and had gotten home at her residence at 3906 Wiley Avenue, Apartment B, in East Ridge, and had gotten home about 1 o'clock.

And she went to sleep on the couch, and she was awakened shortly after 3 a.m. by two sharp blows on her head and face by a person, which, of course, was later identified as Harold Wayne Nichols. He put a knife to her throat and held the back of her neck saying if she didn't do what he said, he would kill her.

He asked her at that time to go into the bedroom and took her into the bedroom at knifepoint and asked her where her dresses were. She refused to answer so he hit her again, slapped her in the head and said, "I'll kill you if you don't do what I say."

She proceeded to tell him about the dresses and clothes, at which time he found a shirt, a skirt, heels and a strapless bra, which he required her to put on. After she put those on, she kept talking to him and he said to shut up or he'd kill her.

He sat her down on the couch, keeping the

knife at her throat, and he started using the knife to cut her dress and her hose off, in the process cutting her leg.

He told her to shut up or he would really cut her after she complained about it. He continued to do that. He asked her at that point where the vaseline was, and he got up and took, forced her into the bathroom at knifepoint, got the vaseline, and then at that point he ripped her shirt -- skirt and her blouse off, her blouse and her bra off with his hands, and then he took the knife and cut her panties off.

He took her back into the living room where he forced her to get down on her hands and knees and he attempted to force himself on her anally at that time but was unable to do so.

He slapped her on the face a few times and said that he would kill her again if she didn't do what he said. He took her to the bedroom. She at that time said she was nauseous and didn't feel good and asked for a wash cloth.

He went around the corner to get a wash cloth, and when he did that, she would testify that she reached into the nightstand and got a .38 pistol, which she kept there, and she kept three bullets, the pistol had three bullets in it. It was in a holster, and as

1    she got it and was attempting to turn toward the door,

2    he came flying across the bed, grabbing her, hitting her

3    head on the night stand.

4    She threw the pistol under the bed, and she

5    was fighting with him at that time. He still had the

6    knife on her. He reached under the bed, got the knife,

7    and as she was pinned in the corner at knifepoint, and

8    reached under the bed, got the gun. He took the gun out

9    of the holster, she said, "It's unloaded." He took the

10   cylinder out and saw that it was, put the cylinder back

11   in the gun, held it to her head and said, "If you don't

12   do what I say, I will blow your," and he used an

13   expletive at this point, "brains all over the walls," at

14   which point she would testify that he held the gun to

15   her head and pulled the trigger.

16   He jerked her off to the floor, hit her in

17   the face again and said, "I should kill you." He made

18   her lay down. He still had her at knifepoint. He held

19   the knife at her stomach, where he at that time

20   forcefully raped her anally.

21   He made her get in the shower, and told her

22   to stay in the shower. She got into the shower and

23   stayed until she felt like at that point, and she would

24   testify she didn't know whether she was going to live or

25   die at that point, but she got out of the shower and

1    found that he was gone.

2    She called her neighbors, Mr. and Mrs.

3    Millard, who lived a couple of doors down. She put on

4    some clothes, ran out to there to meet them, and shortly

5    after that her parents and the police arrived.

6    The proof would further show, Your Honor,

7    from, of course, Dr. Brian Glass of Erlanger Hospital

8    emergency room there where she was examined, he would

9    testify as to his findings, her condition and so forth.

10    The State would call Officers Butch Bryson,

11    Todd Clay of the East Ridge Police Department, who were

12    the initial officers arriving on the scene, testify to

13    what they found, that the area of the entry of the house

14    was the window at the carport area just above where her

15    car was parked.

16    Your Honor, the proof would show also, the

17    State would call Detectives Buck Turner and Captain

18    Larry Holland of the East Ridge Police Department who

19    would testify that on the 5th day of January, they

20    received information that Harold Wayne Nichols of 918

21    Donaldson Road, Apartment A, was the possible suspect in

22    this case.

23    They had Ms. Tate come in and she viewed

24    some photographs and identified Harold Wayne Nichols.

25    He was arrested on the evening of January the 5th at his

1    home there on Donaldson Road, was taken to the East
2    Ridge Police Department where, during the course of that
3    evening and early the next morning, he gave a
4    tape-recorded statement admitting his participation in
5    what he did there at, to Ms. Tate there at Wiley Avenue.

6    Also during the evening, the police
7    obtained from him a consent to search, and they -- to
8    search his automobile there at his home, and when they
9    searched the automobile, they found the .38 caliber
10   revolver belonging to Ms. Tate, and a knife that was
11   used on her, which she identified both the knife and the
12   gun.

13   Also, Your Honor, during the course of the
14   investigation by the East Ridge Police Department, they
15   took Mr. Nichols in the car and he took them to the
16   location there at 90 -- 3906 Wiley Avenue and pointed
17   out the apartment and told them that's where the rape
18   occurred.

19   THE COURT: Mr. Moore or Ms. Beverly, do
20   either of you wish to respond to the statement of proof
21   by the attorney general?

22   MR. MOORE: No response, Your Honor.

23   THE COURT: All right. Anything that Mr.
24   Nichols wants to say? Of course, you can confer with
25   your attorneys before you answer.

28

1        THE DEFENDANT: No, sir, Your Honor.

2        MR. BEVIL: Your Honor, let me just say --

3    I'm sorry I left it out -- let me just say that he did

4    state in his admission to the police department that the

5    way he entered the apartment was by climbing on her car

6    that was parked there in the carport and standing on the

7    car and climbing into the window, he did admit that, and

8    also the proof would show by Ms. Tate that her pocket --

9    her purse was taken, along with the gun and some paper

10   and some money and things, which would make out the

11   larceny case.

12       THE COURT: All right. The defendant,

13   Harold Wayne Nichols, has signed a motion to allow

14   waiver of a trial by jury, along with his attorneys.

15       The Court, having talked to Mr. Nichols,

16   the Court finds that you are freely and voluntarily of

17   your own accord, Mr. Nichols, waiving your right to a

18   trial by jury.

19       The Court further finds, based on the

20   statement by the attorney general of what the proof

21   would be if we had a trial, about how you got into the

22   apartment by climbing on the car and getting into the

23   house would show burglary in the first degree, and, of

24   course, the fact that it was at night would make it

25   burglary in the first degree. There was a breaking and

| 1 | entering with intent to commit a felony therein, so |
| 2 | there is a basis for a finding of guilt of burglary. |
| 3 | Of course, the taking of the pistol, the |
| 4 | finding the pistol that belonged to the victim in your |
| 5 | car would show that there was larceny; that you took the |
| 6 | property out of the apartment with intent to convert it |
| 7 | to your own use. And since there's no statement as to |
| 8 | the amount involved, that would be petit larceny. And, |
| 9 | of course, obviously there is a dispute about the amount |
| 10 | of value of the gun. And, of course, you have pled to |
| 11 | petit larceny, the lesser offense, which would be |
| 12 | anything of value. |
| 13 | As to the aggravated rape, the statement by |
| 14 | the attorney general shows that you did commit the act |
| 15 | of aggravated rape; that there was an unlawful sexual |
| 16 | penetration of the victim; that you used force and |
| 17 | violence to commit that act, so there is a basis for a |
| 18 | finding of guilt of aggravated rape, petit larceny and |
| 19 | burglary in the first degree, so the Court finds that |
| 20 | you are guilty in case 175433 with the offense of |
| 21 | aggravated rape, in case 175442 of petit larceny, and in |
| 22 | case 175490 of first degree burglary. |
| 23 | The Court will have -- the Court finds that |
| 24 | you are -- it'd be a judgment of infamy. The Court will |
| 25 | have to set your punishment at a sentencing hearing at a |

1  later date. And, of course, Mr. Moore and Ms. Beverly

2  were supposed to schedule a hearing within 45 days at

3  the defendant's request last time we put the sentencing

4  over until all the cases were heard. Is that the

5  defendant's desire in this case, or does the defendant

6  wish to have this matter referred to the parole,

7  parole -- probation office for a presentence report at

8  this time?

9  THE DEFENDANT: No, sir, I'll waive that

10  right to have it heard.

11  THE COURT: You wish to have the matter

12  referred to the probation office at this time, and you

13  do not wish to have a hearing, a sentencing hearing at

14  this time?

15  THE DEFENDANT: That's correct, Your Honor.

16  THE COURT: Until the other cases are

17  resolved?

18  THE DEFENDANT: That's correct.

19  THE COURT: All right. You know at the

20  sentencing hearing, of course, I will have the benefit

21  of a, of a presentence report. At the sentencing

22  hearing, I will listen to your testimony if you care to

23  testify. And, again, you do not have to testify at that

24  hearing. I will listen to the testimony of the other

25  witnesses that you may call, I will listen to the

|    |                                                          |
|----|----------------------------------------------------------|
| 1  | testimony of the victim, any other witnesses that the    |
| 2  | State might call at that sentencing hearing. I will      |
| 3  | listen to statements by Mr. Moore and Ms. Beverly and by |
| 4  | Mr. Bevil, and I will consider the testimony and the     |
| 5  | statements and my advice to you of your constitutional   |
| 6  | rights at this hearing. I will consider all other        |
| 7  | matters that I know about this case, and I will apply     |
| 8  | the sentencing guidelines set out in the act to set your |
| 9  | punishment in these three cases.                         |
| 10 | THE DEFENDANT: Yes, sir.                                 |
| 11 | THE COURT: Now, you now stand convicted of               |
| 12 | these three cases.                                       |
| 13 | THE DEFENDANT: Yes, sir.                                 |
| 14 | THE COURT: And the only thing left on                    |
| 15 | these is sentencing.                                     |
| 16 | THE DEFENDANT: Yes, Your Honor.                          |
| 17 | THE COURT: Of course, victims do have                    |
| 18 | rights, and the victim and family and others will be     |
| 19 | heard at the sentencing hearing. They have that right.   |
| 20 | Under our criminal justice system, Mr.                   |
| 21 | Nichols, society must punish when people violate the     |
| 22 | law, and you've been charged with a most serious crime.  |
| 23 | I guess the most serious crime next to death, next to    |
| 24 | murder, aggravated rape would be right there.            |
| 25 | And obviously it has had a terrible effect               |

32

| | |
|---|---|
| 1 | upon the victim, one that hopefully she will get over, |
| 2 | but it'll have a lasting impression upon her. |
| 3 | So society must punish and society, through |
| 4 | this Court, will have to punish you for the act that |
| 5 | you've now been found guilty of. Society has to try to |
| 6 | deter you and others from committing crimes of this |
| 7 | nature through punishment. Society has to restrain |
| 8 | individuals who violate the law, and, of course, you're |
| 9 | in that situation -- |
| 10 | THE DEFENDANT: Yes, sir. |
| 11 | THE COURT: -- where you will have to be |
| 12 | restrained for a very long period of time. |
| 13 | Of course, lastly, society would like to |
| 14 | think that they can rehabilitate, and, of course, I |
| 15 | guess where there's life there's hope, even for someone |
| 16 | charged with the serious offenses that you've been |
| 17 | charged with. |
| 18 | But society also has a right, as I said |
| 19 | earlier, to punish. The only thing, only question here |
| 20 | now is what that punishment will be. |
| 21 | Also, the only thing that this Court has to |
| 22 | be concerned about is that your constitutional rights |
| 23 | are not violated, and if it appears to the victim and |
| 24 | the victim's family sometimes that the Courts are more |
| 25 | concerned with the defendant's rights than they are the |

| | |
|---|---|
| 1 | victim, I hasten to tell you that the only way that |
| 2 | punishment can be meted out to defendants is to be sure |
| 3 | that their constitutional rights are not violated, and |
| 4 | that's why this Court has to be very careful that I do |
| 5 | not allow his constitutional rights to be violated in |
| 6 | any way, because if I did, he would not be punished for |
| 7 | this act that he's now been found guilty of, so it is |
| 8 | very necessary that we address his rights and see that |
| 9 | his rights are protected. |
| 10 | Mr. Bevil, would the victim or the victim's |
| 11 | family want to say anything at this time, or had they |
| 12 | prefer to wait until the sentencing hearing? |
| 13 | MR. BEVIL: I would imagine -- one moment, |
| 14 | Your Honor. |
| 15 | They'd rather wait until the sentencing. |
| 16 | THE COURT: All right. Anything else we |
| 17 | need to take up on this matter? |
| 18 | MR. MOORE: No, Your Honor. |
| 19 | THE COURT: The next cases are set -- |
| 20 | MR. MOORE: In December. |
| 21 | MS. BEVERLY: December 5th. |
| 22 | THE COURT: December 5th, Patricia Roach. |
| 23 | MS. BEVERLY: Yes, sir. |
| 24 | THE COURT: December the 5th. All right. |
| 25 | END OF REQUESTED PROCEEDINGS. |

CERTIFICATE

I, the undersigned Abigail M. Pearce,
Official Court Reporter for the Eleventh Judicial
District of the State of Tennessee, do hereby certify
that the foregoing is a true, accurate and complete
transcript, to the best of my knowledge and ability, of
all the proceedings had and evidence introduced in the
trial of the captioned cause, relative to appeal, in the
Criminal Court for Hamilton County, Tennessee, on the
24th day of October 1989.

I do further certify that I am neither of
kin, counsel nor interest to any party hereto.

_____*Jan. 8*_____ 19 *98*

*Abigail M Pearce*

Official Court Reporter
State of Tennessee