XIII. NO.236

IN THE CRIMINAL COURT OF TENNESSEE AT CHATTANOOGA

THE ELEVENTH JUDICIAL DISTRICT

STATE OF TENNESSEE          )     Cases No. 175433
                            )               175442
                            )               175490
                            )
VS.                         )
                            )
                            )
                            )
HAROLD WAYNE NICHOLS        )

FILED
AUG 0 2 91
ROBERT W. SUMMAR, CLERK

TRANSCRIPT OF HEARING ON DECEMBER 18, 1989

Volume One of One Volume

THE HONORABLE DOUGLAS A. MEYER, PRESIDING JUDGE

APPEARANCES

FOR THE STATE:

        Mr. Gary Gerbitz
        District Attorney General
        Mr. Stephen M. Bevil
        Assistant District Attorney General
        Hamilton County Justice Building
        Chattnooga, TN  37402

FOR THE DEFENDANT:

        Mr. Hugh J. Moore, Jr.
        Attorney-at-Law
        11th Floor American National Bank Building
        Chattanooga, TN  37402

IN THE CRIMINAL COURT OF HAMILTON COUNTY, TENNESSEE

DIVISION I

| STATE OF TENNESSEE | ) | Cases No. 175433 |
| | ) | 175442 |
| VS. | ) | 175490 |
| | ) | |
| HAROLD WAYNE NICHOLS | ) | |

These cases came on to be heard on the 18th day
of December, 1989, before the Honorable Douglas A. Meyer,
Judge, holding the Criminal Court for Hamilton County, at
Chattanooga, Tennessee, and the following proceedings were
had, to-wit:

MR. MOORE:  May it please the Court, here before
the Court this morning on motion to withdraw guilty pleas
in cases 175433, 175442, 175490.  In addition to the motion
to withdraw guilty pleas filed on December the 4th, we
filed a supplemental motion to withdraw the guilty pleas
last Friday, December the 15th.

The motions that we filed, Your Honor, the
motions to withdraw the three guilty pleas in this case, we
submit that the motions raise two problems, a general
problem and a more specific problem.  The general problem
is the failure of the police and the State to provide the

defense with the exculpatory material that we're entitled to pursuant to Rule 16 of the Tennessee Rules of Criminal Procedure and this Court's order of February 28th.

I just looked at the State's answer to motion to withdraw guilty pleas, and I would respectfully submit to the Court that it's just wrong. It's wrong in a couple of aspects. For one, it says we've made no claim about the statements impeaching anybody or providing material for cross examination. We claim very specifically in our motion filed last Friday the differences are crucial because they go to the intent, they provide a new and important basis for cross examination. We very specifi- cally say what the State says we didn't say. So I don't understand the State's contention. Also don't understand the State's contention that the tape recording was not covered by the Court's order. As noted in our supplemental motion, the tape recording is clearly exculpatory with regard to the assault count. I don't know how the State could claim that that can be withheld from us pursuant to this Court's order.

Additionally the State had a typewritten statement which I believe the State had on September the 13th, one month before the plea negotiations. That state- ment which is also in part exculpatory was never made available to defense counsel in spite of this Court's

orders.

So we've got a general problem of the failure of the police and the State to give us what we're entitled to and what the Court said we should have. The more specific problem relates to these three cases, and that's the specific problem that because of the failure of the East Ridge Police Department to turn over the taped statement, failure of the State to give us the typewritten statement, Ms. Beverly and I were placed in the position of negotiating with the State on an unfair playing field. It's like the---maybe the goals were four feet high on their end of the court and they were twenty-five feet high on our end of the court.

The question before the Court this morning is how can these problems be best resolved, that is, the general problem of the police and the State's failure to give us what we're entitled to, and the specific problem in these three cases, 175433, 175442, 175490, of our entering into good faith negotiations with the State while the State was holding all the cards.

As we noted in the brief, it is completely within this Court's discretion to decide what to do. This Court has broad discretion in this area and it's within the Court's discretion not only to decide whether to grant a new relief but to decide what relief should be granted, if

1  any.

2       We submit that the specific problem, that is, the
3  problem relating to the guilty pleas in these three cases,
4  can be best resolved by allowing Mr. Nichols to withdraw
5  those guilty pleas.  That would put him back where he was
6  before we entered into the flawed negotiations with the
7  State.  As we noted in the supplemental motion, we don't
8  know what the result of negotiations would be or would have
9  been with that additional information because we didn't
10 have it then.  It's a new playing field.  The result of the
11 negotiations could be similar, could be the same, it could
12 be not the same at all, but we think that he's entitled to
13 be put back to where he was before the plea negotiations.

14       As to the general problem, that is, the failure
15 of the State and the police to provide the necessary infor-
16 mation to us, we think that's much more of a problem.  And
17 we submit that it requires different relief, some relief
18 that will solve the problem.

19       Briefly looking at the facts, the East Ridge
20 Police have been involved in this case for about a year,
21 more than a year I guess.  They've been in court numerous
22 times.  They've been here with the attorney general
23 preparing, been in the attorney general's office talking
24 with him numerous times about the case.  At least two of
25 the officers testified here at length on the hearing on the

motion to suppress. So those officers were well aware of
what they're required to do, both for the State and for
appointed defense counsel in this case. In spite of that
East Ridge Police withheld for more than ten months both
from the State and from us tape recorded statements from
three of the alleged victims in these cases. These state-
ments weren't provided to General Gerbitz or to---and let
me say that General Gerbitz provided those taped statements
to us the day that he received them. They weren't provided
to them until about three weeks ago I believe, two or three
weeks ago. More than ten months after the arrest, they
decide, well, maybe they'll turn these over to the State.
I think anyone would agree that the taped statements of the
alleged victims in these cases are probably the most crucial
individual piece of evidence in the case. And I don't know
what it says about the East Ridge Police or their dili-
gence, or what they think about this Court's orders, but
they clearly---something needs to be impressed upon them
that these are important cases and that Mr. Nichols, and
any defendant, has rights that need to be watched out for,
and that they can't just sit on a tape for ten months and
then come in after a plea has been entered and say, "Well,
here's a tape of what the victim had to say happened.
Little bit different than what you knew earlier but doesn't
make any difference."

The State also had a typewritten statement that, according to a stamp on the statement, was given to them September the 13th of this year, more than a month before the pleas. That statement wasn't given to us either.

We think that the relief granted by the Court has got to be the kind of relief that will assure that these actions don't happen again. And we submit that the only proper relief in these cases is dismissal of these three charges. Now if these were the only charges against Mr. Nichols I would not be here arguing to the Court that those cases should be dismissed. But as the Court knows, the attorney general knows, everyone knows, they are not the only charges. Other pleas have already been entered. There's one murder case and ten rape cases yet to be tried. We submit that in this situation the dismissal of three of more than fifty serious felony charges against him is the proper remedy. We think that only dismissal can send the message to the police, the law enforcement officers, that they're important cases and that rights have to be protec-ted, and that something as important as the taped statement of one of the alleged victims cannot be just held in somebody's desk drawer until they feel like it's proper to bring it in, and then bring it in after pleas have been negotiated and entered.

So we submit that, one, the Court should allow

Mr. Nichols to withdraw his pleas of guilty to cases 175433, 175442 and 175490, and that those three cases should be dismissed.

Your Honor, I've got two other motions that I filed on Friday. I know that they're not timely now---

THE COURT: Motion for appointment of local counsel.

MR. MOORE: And a motion for exculpatory material.

THE COURT: Yes.

MR. MOORE: Let me just briefly mention those, Your Honor. The motion for exculpatory material, we learned that a number of these victims have filed claims with the Tennessee Claims Commission in Nashville. We called over there in an attempt to get those claims, which each claim contains a sworn statement by the victim, and they won't give them to us. They said we can come to Nashville and get them but they wouldn't mail them to us. What I've asked for in my motion for exculpatory material is some sort of a court order that would let us by mail get copies of these statements from the Tennessee Claims Commission without the expense of going over there to pick 'em up.

The second item, motion for appointment of local counsel, Your Honor, we assume that during voir dire in

whatever county seat we go to select the jury on the next
case and then the following cases, that the State would
have the assistance of the district attorney general's
office in that district in selecting a jury. We think that
that would be wise for them and, additionally, we think it
would be wise for us to have similar assistance. There-
fore, we're asking for appointment of local counsel for the
limited and very narrow purpose of meeting with us briefly
to discuss the drawn panel, the venire in the county wher-
ever we go, and then to sit with us at counsel table during
selection of the jurors to provide any information that
might be of some help to us. We do not think that the
expense there would be very great. At the court appointed
rate of $30 an hour in court, if we had ten hours one day
in court, plus two hours consultation, which is probably a
long time for consultation, that's still just $360. And we
submit that that would be of great assistance to us in
selecting a jury in one of these outlying counties. And as
to whether the---I'll just leave that up to the Court.

THE COURT: All right. Answering the two easiest
ones first, does the State have any position on his request
for local counsel in the county in which the jury will be
selected?

MR. BEVIL: That's entirely up to the Court. I
think he's got competent counsel already and he's got---I

think an investigator was appointed. So that's plenty of representation. Of course, it's a matter in discretion of the Court I suppose.

THE COURT: Okay. And then what about---

MR. BEVIL: We don't have any objections to the other. I think he would be entitled to that, Your Honor.

THE COURT: All right. As far as getting the copy of the statement made to the Claims Commission, then if you'll draw an order I will order them to provide that to you.

Also I will approve of your association of counsel in the counties in which the jury is to be selected. And what I'm going to have to do, and whoever takes that appointment, will have to wait to be paid on that because really I'm going to appoint them under the death penalty case, where the State has given notice they're going to seek the death penalty. Really I cannot appoint him on this particular case---

MR. MOORE: Yes, Your Honor.

THE COURT: ---but I will appoint him in the death penalty case.

MR. MOORE: And we may be able to find somebody through Tennessee Defense Counsel who would be interested in doing it and would be willing to accept this kind of an arrangement. If that's satisfactory with the Court, I'll

1  make inquiries about who, in whatever county we go to,
2  might be willing to---

3     THE COURT: Before I get around to ruling on this
4  other point then, while we're on this subject, I have
5  discussed setting the case in Manchester on January the
6  9th. And my reasons for that are several. One is I did
7  check with Judge Ewell and the Manchester area does not
8  receive the local television stations. All their tele-
9  vision and their cable and all is out of Nashville. The
10 majority of their people subscribe to the Nashville papers.
11 I think the Free-Press also circulates in Manchester but
12 not that much. And my feeling on going there is the most
13 important case to be tried is the death penalty case. And
14 I would prefer to save Nashville for that case. I'm afraid
15 if we go to Nashville with all the cases, even in Nashville
16 it might start getting a lot of publicity. And I thought
17 we would go to Manchester this time, maybe go to Murfrees-
18 boro or some other place next time, and then the death
19 penalty go to Nashville. Manchester does have available---
20 they have two courtrooms. So they have a courtroom that's
21 available to us. They will be impaneling new jurors the
22 week before that so we will have a full panel available to
23 us. And it just seems like that would be a good place to
24 try the case. Unless I hear some awfully strong objections
25 from either side, then we'll transfer the case. I'll grant

a change of venue to Coffee County. And jury selection
then would start on Tuesday, January the 9th.

MR. MOORE: Would trial then start the 10th, that
is, assuming we pick a jury the 9th, we'd come back here
and trial would start the morning of the 10th?

THE COURT: Right.

MR. MOORE: Okay.

THE COURT: If we get the jury in one day. I
assume we can get the jury in one day without any problem.

MR. MOORE: Should be able to.

THE COURT: But after we pick the jury we'll be
coming straight back to Chattanooga to try the case.

Now does the State want to be heard now on the
other motion, the one that's a little more complicated?

MR. BEVIL: Yes, Your Honor.

Your Honor, first of all, I think we need for the
record to put in a proper perspective what statements we're
talking about. One statement is---there was a brief state-
ment apparently taken from the victim by the initial police
officer arriving on the scene. In that initial police
report there was a small, about a half a page paragraph.
That statement that she had given to the officer, which he
recorded, primarily dealt with the felonious assault,
pulling the gun. There was a general statement I believe
about the rape but there weren't any specifics. It

wasn't a detailed statement.

The second statement as referred to is---at the time that the East Ridge Police Officers were investigating these cases, they took a tape recorded statement of several of the victims. We found out about this in the process of talking to, I guess, the third victim. Realized that there was definitely a tape recording somewhere available. We got in touch with the East Ridge Police Department. We had tried several times and they told us that we had all the information that was available. And we did find a tape and on that tape, in preparing for the case involving Patricia Roach, we found out that the tape with her statement on it also contained the statement of Susan Tate, which is the victim in the cases before the Court now on this motion. As soon as we got that we provided that to defense counsel. And that was a more detailed statement involving details about the rape and the burglary, as well as the felonious assault.

We likewise discovered that there had been an affidavit filed by the victim, Miss Tate, in her claim for victim's compensation. That statement was not something that we had that we obtained through the investigating officers or something that we had separate and apart from the availability of defense counsel. It was something that was filed and anyone had access to it, and we obtained a

1   copy of that.

2           THE COURT: Now that's the one before the Claims

3   Commission?

4           MR. BEVIL: That's the one before the Claims

5   Commission, yes, sir, which was available to anyone as a

6   matter of public record as far as I know.

7           MR. MOORE: Your Honor, it's available only if

8   you go to Nashville and pick it up.

9           THE COURT: Right.

10          MR. BEVIL: We were not aware that they did not

11   have access to this, this particular statement or affi-

12   davit. And I will say this was not a statement given to

13   anyone prior to---at the time of the commission. Later on

14   some months after the commission of the offense, Your

15   Honor---

16          THE COURT: Let me interrupt you just for a

17   moment. On page 3 of defense's supplemental motion to

18   withdraw guilty pleas, the first paragraph he cites is from

19   the police report that you just mentioned.

20          MR. BEVIL: Yes, sir.

21          THE COURT: The typewritten, the second

22   paragraph, is from the petition filed with the State Claims

23   Commission.

24          MR. BEVIL: Yes, sir.

25          THE COURT: And then the tape is the one that you

made available to them when you learned of it back in November.

MR. BEVIL: And I might---Your Honor, the whole gist of this motion here is the fact that there appears to be an inconsistency, and he cited it in his supplemental motion, that in one statement she indicated that he pulled the trigger, that is the initial report. In the taped statement she stated that he had held the gun to her head and pulled the trigger. In the typewritten statement which was part of the victim's compensation claim, there is no mention---not that she didn't say he didn't do it, but there is just an omission as to whether or not he pulled the trigger. And that seems to be the inconsistency that they're relying on.

Now, Your Honor, first of all, in response to Mr. Moore's argument, we feel like that that's not exculpatory. It doesn't go to a material element of the offense before the Court. It doesn't provide them---as a matter of fact in our discussion about this case, counsel for both sides, it was brought out the fact that at one point she had said that he didn't pull the trigger and another point that she said that he did.

So when negotiations were made, Your Honor, the defense came to us. There never was a sitting down even considering. The position was from the defense that he

will plead guilty to the aggravated rape, he'll plead guilty to the burglary and he'll plead guilty to petit larceny, but he won't plead guilty to felonious assault. That was the proposal to us from the defense. So we said okay, then we will go with that plea and let him plead guilty to the aggravated rape and plead guilty to the burglary and plead guilty to petit larceny and we'll dismiss the felonious assault. So there never was anything for them to consider as to whether there were consistent statements or inconsistent statements because the only thing they're alleging that those statements go to is the felonious assault case which is not before the Court because that case was dismissed. They're not alleging that there was anything in any one of those statements that would show some inconsistency or some contradiction going to the aggravated rape which he pled guilty to, or going to the burglary, or going to the petit larceny which he entered pleas of guilty to. So they're not saying that there was any exculpatory material in those statements going toward the cases to which he entered pleas, only to the one that he did not enter a plea of guilty.

So, Your Honor, the question is---well, first of all, there was nothing in those statements that provided them with any possible defense which they didn't already have access to, which they didn't already know. There was

nothing in either one of those statements, Your Honor, any information that they say that they did not have that would in any way, as we cited in our answer to that, provide a substantially stronger theory of defense than they already had. The theory of defense was that he was guilty of the rape, he was guilty of the burglary, he was guilty of the petit larceny, but he wasn't guilty of felonious assault. That was apparently their defense. That's what he entered pleas of guilty to.

So the bottom line is, Your Honor, how in any way is Mr. Nichols prejudiced in the three pleas that he entered by not having access to that tape recorded statement, which is a statement of the victim, and the typewritten affidavit that she filed with the victim's compensation claim? The answer is, Your Honor, there's absolutely no prejudice. Mr. Nichols entered these pleas to those three cases knowingly and voluntarily. The State felt like that in those statements they weren't exculpatory. And as cited in our answer, Your Honor, it wouldn't materially affect the credibility of the witness going toward the cases to which he entered pleas. As Mr. Moore did mention, the State did not intentionally keep this statement of the victim from them.

As Your Honor knows, under the Jencks Act---of course, I know what Your Honor says, but under the Jencks

Act they wouldn't have been entitled to that anyway until after the victim testified. But in an ounce of prevention in every case, especially this case, as Your Honor knows, we've gone overboard in trying to provide them with everything that's available, and as soon as it is available we've provided them with it.

There is just absolutely, in the opinion of the State, no reason to set aside these knowing and voluntary pleas of guilty in the three cases that he's entered pleas of guilty.

THE COURT: Let me ask you one question. In talking with the East Ridge officers, was it just inadvertence that they didn't give you the tape before, or what's their explanation of why they didn't furnish the State with the tape?

MR. BEVIL: That it was just misplaced. One of them thought the other one gave it, and the other one thought that he had given it, and it was just---it wasn't intentional I can assure you by the East Ridge Police Department because, Your Honor, a statement of the victims in these cases, there would have been no reason. There would have been nothing at all to gain by the East Ridge Police Department not giving that statement to us because they gave us everything else. It was just a---

THE COURT: Just inadvertence.

MR. BEVIL: Apparently inadvertence or an over-sight.

Your Honor, we, of course, feel like and some-what I guess puzzled as to why this motion would have been filed because, as cited in the motion, it doesn't pertain to the pleas. It pertains to the case which the State moved to dismiss. As Your Honor well knows, the motive for the State in trying some of these rape cases ahead of time is to obtain convictions that can be used as aggravating circumstances in the murder case. The Court knows that, and it's been mentioned several times throughout these hearings. Of course, the only---apparently the only motive in filing this is that if---to try to set aside that con-viction and trying the murder case ahead of time before the rape case again so that there would be---eliminate some of those aggravating circumstances. But, Your Honor, there has to be a reason to set aside the plea. There has to be a legitimate reason to set aside the plea, some kind of fraud or some kind of deceit or some kind of misunderstan-ding on the part of the defendant. And there's absolutely no showing that any of those things occurred, absolutely none whatsoever.

Of course, I guess I'm concerned also, Your Honor, in filing of this, as Your Honor well knows, one of the reasons for the State even agreeing to dismiss the

felonious assault case and proceed on those pleas was for
the---I guess the protection of the victim, to avoid the
victim having to go through the ordeal of a trial. And now
the victim's had to go through with the publicity that's
been generated regarding this filing of the motion to with-
draw the plea. The victim has had to go back and wonder
now, "Am I gonna have to go through a trial?" And the
progress that the victim has made has been---she's had one
step forward maybe and three steps backward. And we
strongly oppose, strongly oppose this, Your Honor, because
there is no basis in law or in fact to set aside this plea
of guilty.

THE COURT: All right. Anything further, Mr.
Moore?

MR. MOORE: No, Your Honor.

THE COURT: Of course, both briefs do point out
correctly that before sentencing a plea may be withdrawn
for any fair and just reason. And for the reason that I
will elaborate on now, the Court does not find any fair and
just reason to allow the guilty pleas to be withdrawn.

As the State points out, the example set out in
the supplemental brief goes really to the charge of the
felonious assault, or assault with the intent to commit
murder in the first degree, which has been dismissed. I do
not see any other prejudice at all to the defendant or see

in any way that the defendant having had access to this report or petition filed with the Claims Commission or the tape would in any way have changed the defendant's position as to the aggravated rape cases or the burglary case. As I say, I do not see how anything that's been set out in the petition would raise to the level of being a fair and just reason.

So the petition to withdraw the guilty pleas is denied.

Anything else that we need to do?

There has been---I don't know if it was in the form of a pleading or what, but there's been some question about the manner in which the cases are scheduled for trial. Of course, it's impossible to try the defendant on all the cases at one time. So we have to try the cases in a series of cases. And that is not a denial of the defendant's right to a speedy trial at all unless the defendant insists that we try them all at one time at one trial so we can have a speedy trial. And the manner in which the cases are tried, somebody has to decide in which order to try them. And I would think that the Court would listen to the representative for the people of the State of Tennessee in determining what order to try them unless there can be some showing that that denies this defendant some constitutional right. And I don't see any denial there at all.

MR. GERBITZ: So we're on Patricia Ann Roach for the 9th. Case that came up that we could not select a jury on a couple of weeks ago is the case we'll try on January 9th?

THE COURT: January 9th. And what's her name?

MR. BEVIL: Patricia Roach.

MR. GERBITZ: Patricia Ann Roach is the victim.

THE COURT: Okay.

MR. GERBITZ: And that was the case that we got as far as we could a couple of weeks ago and couldn't---

THE COURT: All right. Patricia Ann Roach will be January the 9th. And then the next case I believe is over in February. It's February the 19th, and that will now be Patricia Ann Gore.

MR. BEVIL: Yes, sir.

THE COURT: What day of the week would you all prefer to go to another county in February? Would you rather go on a Monday or would you rather go on a Tuesday to get a jury? It will be an aggravated rape case.

MR. MOORE: I don't have any preference, Your Honor.

MR. GERBITZ: We were scheduled on Monday. Let's just go Monday.

MR. BEVIL: Just leave it Monday if that's okay with the Court.

1    THE COURT:  You'd rather go over there and pick
2 the jury on a Monday?
3    MR. BEVIL:  Yes, sir.
4    THE COURT:  Okay.  We could actually change this
5 one on January the 9th, if you all really wanted to, to go
6 over there on a Monday, on January the 8th.  I don't see
7 any need to change it though.
8    MR. GERBITZ:  No.
9    MR. BEVIL:  Just leave it as it is.
10    MR. GERBITZ:  Dates are set.  Let's leave it.
11    THE COURT:  All right.  January the 9th, the case
12 to be tried will involve the victim Patricia Ann Roach.
13 And on February the 19th, it will be Patricia Ann Gore.
14 And I will between now and then look for another county
15 that would have an available courtroom to where we can get
16 a jury there.
17    MR. MOORE:  Your Honor---
18    MR. BEVIL:  So would that mean then on April the
19 10th, which was set for the next case, will that be the
20 murder case?  That would be the next available date.
21 Because we were set to try the murder case in February, and
22 with moving it back, that would move then the murder case
23 to April the 10th?
24    THE COURT:  April the 10th will be the murder
25 case.

1    MR. MOORE:  Your Honor, I've got a major problem
2    with that date.  That was not a problem before.  I've got a
3    case, major case, involving a---I'm representing the
4    defendant in a case where a man was blinded in industrial
5    accident.  Case is set for trial in Federal Court on April
6    the 9th.
7            THE COURT:  Well, we need to shift that---
8            MR. MOORE:  I was---
9            MR. GERBITZ:  We have no problem with him picking
10   another date.
11           MR. MOORE:  I was not---
12           THE COURT:  Let's get another date.
13           MR. MOORE:  I was not---having a rape case set on
14   the 10th didn't concern me as much as having the murder
15   case set on the 10th.
16           THE COURT:  Okay.  When do you want to try it?
17           MR. MOORE:  I guess by the week of the 23rd.
18   That case in Federal Court, if it tries, and it looks like
19   it will try, will take a week, at least a week.
20           THE COURT:  I'm wide open on that date.
21           MR. GERBITZ:  We have a judicial conference
22   sometime in April, and I don't have any idea what the dates
23   would be.
24           THE COURT:  It's the week before.
25           MR. GERBITZ:  All right.

MR. BEVIL: Okay, that'd be fine.

MR. GERBITZ: That'll be fine then.

THE COURT: Judicial conference is April the 18th through the 20th. So that next week---

MR. GERBITZ: Monday.

MR. MOORE: Monday, the 23rd?

THE COURT: Yes, since it's a murder case. And I have not checked in Nashville to see what day they get their jurors over there. We may on that case---we'd probably have to even get a separate venire of jurors.

MR. GERBITZ: They do their motions and non-jury matters on Friday.

THE COURT: They do?

MR. GERBITZ: Unless they've changed since we were over there last.

THE COURT: All right. As I say, we may even have to get separate jurors because they separate their civil and criminal juries over there anyhow. And it may be that in talking to them that we'll need to get extra jurors.

Is Monday, the 23rd, all right with you to start it?

MR. MOORE: Yes, Your Honor, that's fine.

THE COURT: Since it is a murder case we really should start it on a Monday.

MR. MOORE: That's fine. As I said, that conflict didn't make a lot of difference otherwise, but it does with that case being re-set.

THE COURT: Okay.

MR. MOORE: Two other matters, Your Honor. The Court had granted my motion to be allowed to voir dire the East Ridge Police officers.

THE COURT: Yes.

MR. MOORE: I would like to do that before the morning of the trial if possible, particularly since we've now learned that they---

THE COURT: Okay.

MR. MOORE: ---may have other evidence. I'm open as to when I can do that. I'd like to do it when it's convenient with the police officers.

THE COURT: When would be a convenient time?

MR. BEVIL: Whenever the Court wants to set it.

THE COURT: I'd say the 3rd, 4th or 5th.

MR. MOORE: I'm available any of those days, any time during the day.

MR. GERBITZ: Well, the 9th is Tuesday, is it not?

THE COURT: Yes.

MR. GERBITZ: How about the 8th?

THE COURT: The day before?

1      MR. GERBITZ:  He said the day before.

2      THE COURT:  Did you say you wanted it---

3      MR. MOORE:  I said just some time before.  I

4  would rather it not be the day before.

5      THE COURT:  Let's do it the week before that.

6      MR. GERBITZ:  Okay.

7      THE COURT:  4th, 5th of 6th.  And any day is all

8  right with you?

9      MR. MOORE:  Any day is fine.  I'm free.

10     THE COURT:  Then, Mr. Bevil, would you arrange

11  for the East Ridge Police officers to be available on

12  either 4th, 5th of 6th, and then let Mr. Moore know which

13  day that they're available?

14     MR. BEVIL:  Yes, sir.

15     THE COURT:  Okay.

16     MR. MOORE:  And, Your Honor, the other---I don't

17  know whether---I don't have my rules with me.  I don't know

18  whether my motion to withdraw the pleas is appealable or

19  not.  If it is appealable I'd like the Court to order to

20  give me the time to---

21     THE COURT:  No, I would not grant a discretionary

22  appeal.  So you would have to request the Court of Appeals

23  to do so.

24     MR. MOORE:  Okay.  Thank you, Your Honor.

25     THE COURT:  If you're making a request and then

you want to reduce that in writing, then I will act as if
it was in writing and deny your request for a discretionary
appeal.  And then if you would like, you can draw an order
to that effect.

MR. MOORE:  That's what I'll do.

THE COURT:  Okay.

MR. MOORE:  Because I hadn't gotten that far.

THE COURT:  Anything else, Mr. Moore, or General
Gerbitz or Bevil?

MR. BEVIL:  No, Your Honor.

MR. GERBITZ:  No, thank you, Your Honor.

MR. MOORE:  Thank you, Your Honor.

END OF PROCEEDINGS

* * *

## CERTIFICATE

I, Dorothy M. Rogers, Official Court Reporter for the Eleventh Judicial District of the State of Tennessee, do hereby certify that the foregoing is a true, accurate and complete transcript, to the best of my knowledge and ability, of all the proceedings had in the hearing of the captioned cause, in the Criminal Court for Hamilton County, Tennessee, on the 18th day of December, 1989.

I do further certify that I am neither of kin, counsel nor interest to any party hereto.

*January 21*, 1990.

*Dorothy M. Rogers*
Official Court Reporter
State of Tennessee