1     IN THE CRIMINAL COURT CF TENNESSEE AT CHATTANOOGA

2             THE ELEVENTH JUDICIAL DISTRICT

3

4   STATE OF TENNESSEE,        )   Cases No. 175495, 175497,
                Appellee,      )        175433, 175442, 175438,
5                              )        175440, 175492, 178087,
                               )        180535, 180536, 180537,
6   VS.                        )        175423, 175425
                               )
7                              )
                               )
8                              )
    HAROLD WAYNE NICHOLS,      )
9                Appellant.    )

10

11        TRANSCRIPT OF SENTENCING HEARING

12           Volume One of One Volume

13

14   THE HONORABLE DOUGLAS A. MEYER, PRESIDING JUDGE

15

16                  APPEARANCES

17   FOR THE APPELLEE:

18        Mr. Stan Lanzo
          Assistant District Attorney General
19        Hamilton County Justice Building
          Chattanooga, TN  37402

20

     FOR THE APPELLANT:

21

22        Mr. Hugh J. Moore, Jr.
          Ms. Rosemarie Bryan
          Attorneys-at-Law
23        1100 American National Bank Building
          Chattanooga, TN  37402

24

25

F I L E D

AUG 0 2 91

ROBERT W. SUMMAR, CLERK

# LIST OF EXHIBITS

| No. | Description | Page |
|-----|-------------|------|
| 1 | Transcript of Testimony in death penalty case | 14 |
| 2 | Charts | 21 |

IN THE CRIMINAL COURT OF HAMILTON COUNTY, TENNESSEE

DIVISION I

STATE OF TENNESSEE     )    Cases No. 175495, 175497,

)        175433, 175442, 175438,

VS.               )        175440, 175492, 178087,

)        180535, 180536, 180537,

HAROLD WAYNE NICHOLS   )     175423, 175425

These cases came on to be heard for sentencing on the 14th day of December, 1990, before the Honorable Douglas A. Meyer, Judge, holding the Criminal Court for Hamilton County, at Chattanooga, Tennessee, and the following proceedings were had, to-wit:

THE COURT: Are both sides ready for sentencing then in the other cases in which we had a trial or in which the defendant pled guilty?

MR. LANZO: State's ready, Your Honor.

MS. BRYAN: Your Honor, may I make a preliminary motion before we start?

THE COURT: All right.

MS. BRYAN: Your Honor, we would move that we not sentence on these cases today because we don't think Your Honor can under the law. The pre-sentence report that the probation officer has prepared is a violation of TCA

Section 40-35-205 and 40-35-207, specifically 207(b). On the last page of both of the reports, and that's on page 12 of the report on all the other cases, and on page 6 of Karen Pulley cases, the officer states that "The subject has been described as having intermittent explosive disorder. If so the results have been absolutely devastating to this community and especially to his victims. The actions predicated by the subject's disorder have without doubt earned him the maximum penalty allowable under law for each crime of which he is convicted, that the sentences should be served consecutively wherever possible appears to go without saying." It should have gone without saying, Your Honor, because under---

THE COURT: No, he's not supposed to make recommendations.

MS. BRYAN: I think, Your Honor, not only not supposed to but disallowed under the law. As Your Honor knows, you've got to consider a pre-sentence report. And under 40-35-205 he's required to follow the requirements of 40-35-207 and (b) specifically states that the pre-sentence report shall not include a recommendation for a confinement or non-confinement. And in addition, Your Honor, the notes in the new code to that state that sentencing reports should not be adversarial in nature but should be informative. As Your Honor is well aware, the law was

specifically changed. Surely our probation office is aware

of that change. And I would submit, Your Honor, that the

officer in this case has---

MR. LANZO: We have no problem with striking

that, Your Honor. And whatever recourse---I mean if you

need another day or something, we can strike it, erase it.

I don't know that---

THE COURT: I'm going to deny your motion to

continue because I can correct it by just not considering

anything that I should not consider.

MS. BRYAN: Well, Your Honor, I understand that,

that we would ask you in the alternative to redact it, but

we're asking you---

THE COURT: No, I'm just going to redact it.

MS. BRYAN: ---to not use that report because

it's improper. I'd like to go through it in more detail as

well.

THE COURT: I can truthfully tell you that I have

not even read the report. I have not read the report. I

read victim impact statements but I have not read the

report from Mr. Barnes because I didn't need to read the

report as far as sentencing in this case is concerned.

MS. BRYAN: Well, Your Honor, for the record---

THE COURT: But I will---

MS. BRYAN: ---we would object to your sentencing

1  him.

2          THE COURT:  No, I will---

3          MS. BRYAN:  If Your Honor's going to allow the

4  report---

5          THE COURT:  I'm going to consider the report now,

6  any parts of it that you wish for me to consider.  And I

7  won't consider anything you don't want me to consider.  In

8  other words, I'm going to let you redact it.

9          MS. BRYAN:  All right, Your Honor.  On the first

10  one which was on the Karen Pulley cases, page 3, we would

11  object to some of the enhancing factors.  This, of course,

12  is on the burglary and rape charge on the Pulley case.

13  Your Honor, we would object to the enhancing factor of

14  gratification for the defendant's desire for pleasure or

15  excitement.  I understand that part of this and that the

16  aggravated rape was a sexual offense.  Nevertheless there

17  was no proof whatsoever in the record that it was committed

18  to gratify any desire for pleasure or excitement.  We would

19  ask you to redact that enhancing factor.

20          In addition we would ask you to redact the next

21  one, which is a history of unwillingness to comply with the

22  conditions of his sentence involving release in the

23  community.  There was no proof whatsoever put on either of

24  the conditions under which Mr. Nichols was released

25  previously.  In fact there was nothing put on even as to

when he was released, who released him, under what egis he was released or what conditions were applied to that.

Your Honor, I want to back up.

THE COURT: All right.

MS. BRYAN: To where I began to redact specifics. We believe both of these reports are tainted beyond use by the Court as pre-sentence reports because of Mr.---

THE COURT: Well, then I won't consider them and I don't really need to in this case because in this case I heard the proof. I heard about all mitigating circum-stances about Mr. Nichols during the sentencing phase of the death penalty case. So I don't know of anything that could be brought out in here that you would want to be brought out as far as mitigation is concerned. And as far as any aggravating circumstances, the Court heard those during the course of the aggravated rape trials and the death penalty case. So I don't really need the pre-sentence report.

MS. BRYAN: Your Honor, for the record we would move that Your Honor not sentence Mr. Nichols today because under the requirements of the Tennessee Code we don't believe you can do it without a pre-sentence report.

THE COURT: Oh, I think I can. The report is there and you're asking me not to consider this report. And I don't believe that anybody can prepare any report

that could add anything for my consideration in determining aggravating circumstances, mitigating circumstances, and applying the guidelines set out in the sentencing law. I don't think there's anything Mr. Barnes or anybody else in the probation office can do in preparing a report that would be necessary for this Court.

For the benefit of the record, of course, the pre-sentence report does go up, so automatically it will go to the Tennessee Supreme Court for their consideration.

MS. BRYAN: Your Honor, I don't understand under what---our objection is to the report not being in compliance with the law. And I understand Your Honor says that we're wrong on that. But if that is our objection, if Your Honor's in fact not going to use the pre-sentence report, then there's no vehicle by which it can go anywhere. I mean---

THE COURT: It automatically is part of the record so it goes up as part of the record. You don't have to make it a part of the record. It is a part of the record.

MS. BRYAN: Well, what that would force me to do, Your Honor, is to request redactions of portions of it against the will of the defendant because, in fact, we don't want to have to redact portions of it. We don't think that it ought to go up at all. We don't think it's a

legal pre-sentence report.

THE COURT: Well, your next step would be to have the Court of Appeals to not consider it.

MS. BRYAN: I understand.

THE COURT: Because it automatically goes up.

MS. BRYAN: Your Honor, we would also object generally, and Your Honor made reference to them, that Your Honor had seen the victim impact statements, and I believe Your Honor said you were not using them.

THE COURT: I have read those. I am not going to weigh those or consider those.

MS. BRYAN: Your Honor, we would object to the use of those at all. In addition, we object specifically to the use of any victim impact statements on any victims whose cases are not in front of the Court today for sentencing. We would object as well to this December 13th letter. Since it's part of the pre-sentence---

THE COURT: I haven't had time to read it yet either.

MS. BRYAN: Well, I don't think you ought to, Your Honor, since it's part of the pre-sentence investigation which you're not going to consider. But for the record, Your Honor, those are statements that for some reason the officer took upon himself to obtain from---or obtained in some fashion, I don't know what, and we didn't

receive this until Your Honor gave it to us today, of victims who aren't before the Court, whose cases aren't before the Court, who haven't come up. And as Your Honor's aware, there are---

THE COURT: I think the officer merely thought that all cases were going to be taken care of today.

MS. BRYAN: Your Honor, I think he knew very specifically which weren't because he listed them and spoke to me and to the General about them. We would just object to anything entering into Your Honor's consideration on sentencing in regard to victims whose cases have not yet been in front of Your Honor, other than for arraignment.

THE COURT: See, this is one case where the Court has heard enough, heard more than enough to sentence Mr. Nichols without any pre-sentence report. Because during the motions, the pre-trial motions, during the trials, and during the sentencing phase of the death penalty case, this Court knows as much about Mr. Nichols as the Court needs to know because, as I pointed out earlier, you and Mr. Moore brought out everything you could possibly bring out as a mitigating circumstance in the death penalty phase of the trial which you're entitled to do because the jury can take anything into consideration as a mitigating factor. And I think you all exhausted it. So I don't need a pre-sentence report to consider mitigating factors. And as far as

enhancing factors, the proof shows those. So really the pre-sentence report was prepared merely as a technicality because it has to be prepared, that's all.

MS. BRYAN: Well, Your Honor---

THE COURT: I'm going to sentence only on the testimony I heard during the trials and any proof you put on today, any proof the State may want to put on today. I'm going to listen to you and Mr. Moore. I'm going to listen to General Lanzo. And then I am going to apply the guidelines set out in the Sentencing Act in setting the punishment in all the other cases. I'm not going to consider anything else. As far as humanly possible I will not consider anything other than evidence that I heard during the course of the trials.

MS. BRYAN: For the record, Your Honor, we would object to any victim impact statements being used in any way in the sentencing. We would object specifically to any reference to any victims whose cases are not before this Court, or have not previously been before this Court, for sentencing. We object to the December 13th letter very specifically. And we are proceeding with the sentencing under protest because we think that it is in fact an illegal proceeding at that point. But with that on the record we're more than ready to proceed.

THE COURT: Okay. Let me ask you this then. If

I did grant your request for a continuance, how in the world could we be in any better shape at a later time for a sentencing hearing than we are today?

MS. BRYAN: By having a pre-sentence report prepared that's legal and within the bounds of Tennessee Code.

THE COURT: What could that pre-sentence report bring out that was not brought out during the trials?

MS. BRYAN: Your Honor, you're making me second guess the legislature. I don't know why they put in the requirement of a pre-sentence report.

THE COURT: I just said that for record.

MS. BRYAN: I understand.

THE COURT: All right. Are you ready to proceed then?

MS. BRYAN: Yes, we are, Your Honor.

Your Honor, I have some---you would be surprised to know I have some objections to some of the enhancement notices, but I think it would be easier to go through those as General Lanzo goes through the individual cases on his chart.

THE COURT: Okay.

MS. BRYAN: Your Honor, we will not put on witnesses in this sentencing hearing today.

THE COURT: State is not going to put on any

witnesses?

        MR. LANZO: No, Your Honor.

        MS. BRYAN: But we would ask, Your Honor, that you allow us to read into this record by page reference only the testimonies of some of the various witnesses that we put on and that those transcript pages be made exhibits to this hearing.

        THE COURT: All right.

        MS. BRYAN: Specifically the transcript on pages 305 to 322 contain the testimony of Joanne Nichols. We would ask that that be an exhibit to this hearing, defendant's exhibit.

        Mr. Nichols testified which is transcribed on pages 345 to 381. We would ask that that be made an exhibit to this hearing.

        Dr. Engum's testimony is contained in the transcript pages 412 to 451, and we would ask that that also be made an exhibit to the defendant's portion of this hearing.

        And then Dr. Charles Hawkins' testimony is transcribed on pages 487 to 492.

        Your Honor, generally we would ask Your Honor to reconsider---and as Your Honor has said, you were at the trial, of course, and we would ask you to reconsider carefully and mercifully those portions of the transcript. We

believe, Your Honor, that Mr. Nichols sat in front of you
and in front of the jury and everyone else here and told
Your Honor what happened and how he felt about it on the
day that he was in trial. We would ask Your Honor to
consider that. He told you a little bit about his back-
ground. We would ask you to consider that in mitigation.
We would ask Your Honor to consider Dr. Engum's
psychological explanation for Mr. Nichols' behavior as
mitigation as well. And I think specifically we would ask
Your Honor to consider his learned testimony that this
behavior was something that Mr. Nichols could not control,
not that he did not want to control it but that he
couldn't.

Your Honor, we would ask you to consider Dr.
Hawkins' testimony as well with mercy and in mitigation.
He talked to you about not only knowing Mr. Nichols
previously but having talked to him since these things
happened in the jail and talked about the remorse and the
hell that Mr. Nichols was going through and had gone
through since that time.

Your Honor, we would ask you to take these things
into consideration on each and every case that Your Honor
will sentence Mr. Nichols on today. We would ask that you
run his sentences concurrently, and we would ask that you
sentence him at the minimum range available for any

particular case.

In addition, Your Honor, let me just generally say for each of these cases so that I don't have to do it on each docket number, that we object to the use of enhancing priors in these specific cases based on the order that the cases were tried in because, in fact, we've objected vehemently, as Your Honor is aware, from the beginning on the order of the trials. And, therefore, we object generally to that on each step as it would affect the increasing range of punishment for Mr. Nichols.

Your Honor, just I think to make the objection I just made a little more clearly, or in more detail, Your Honor, we have objected consistently and all along on the constitutionality of trying these cases out of their chronological order. And we continue to do that here in sentencing. In other words, Your Honor, we object to a crime that was committed at date A on a time line and then tried in some sort of different order being used as an enhancing factor out of that order.

THE COURT: Seems like I read an advance sheet just the other day though where some appellate court con-sidered that, and I believe that it was contra to your position.

You did make one valid point that I hadn't thought about, and that was that it is necessary for you to

make exhibits of any of the testimony in the sentencing phase of the death penalty case to make an exhibit to this hearing so that the Court of Criminal Appeals can consider that because either side has the right to appeal from the sentencing hearing in this court, and that would go to the Court of Criminal Appeals, whereas the death penalty is going to the Tennessee Supreme Court. And this Court is considering testimony I heard at the sentencing hearing. So if there are any other portions of that hearing that you want an exhibit to this, you should make it available for review. You may have covered everything you want. And the same thing for the State also.

Is anything in that record that you think should be part of any aggravating circumstance---

MR. LANZO: Judge, we would move for the total transcript of the death penalty case be made part of this---

THE COURT: For the benefit of the Court of Appeals.

MR. LANZO: For the benefit of both parties and the Court of Appeals to understand it. We will be relying, or at least some of the enhancing information is developed from the testimony of the psychiatrist himself who indicated that he was basically out of control.

THE COURT: I think probably that's a good point,

is just to make the whole transcript of the actual testi-
mony, not the jury selection or anything else, but of the
actual trial as an exhibit in here so that the Court of
Criminal Appeals would have the opportunity to consider
what we are considering.

MR. LANZO: All right. State's ready to proceed.

THE COURT: So you're going to make a copy then,
have a copy made---

MR. LANZO: Yes. We will have a copy made and
move to make a copy an exhibit to this.

THE COURT: On your display, you might move your
board right over there near Mr. Hobby, in that area as
close to the defendant and his counsel as you can so that
they can see it, and also for the benefit of those in the
courtroom so that they can also see.

MR. LANZO: Your Honor, defense counsel and I
have gone over these exhibits and I've explained them.
I've given the Court and defense counsel Xerox copies of
these.

But what the State has done, Your Honor, to sort
out the facts of these cases and the sentences, we've
started out with the first case in which Karen Pulley was
murdered, and there was a jury verdict on May 5th, 1990, in
which he was found guilty and sentenced to death. That
will be case No. 175504. That is actually the last case

that was tried, but we post it at this point because it's going to be our position that we would want to move each of these sentences be consecutive to that particular sentence.

In case No. 175495, Tami Roszell is the victim in that case, and it was an aggravated rape charge. The jury was sworn and there was a guilty plea entered on 9-13-89. The facts were basically that on December 27th, 1988, there was sexual penetration. There was choking involved, threats to kill, and she was struck in the face by the defendant. The plea was to a Class A felony under the new law. And it is the State's position that he was a Range II offender, multiple offender, at that particular time. And we are relying on the three cases that are before the Court today. Would move to make them exhibits. Those are the prior convictions that were case No. 158823, 158824, 158825. These are three cases; two involving Beth Riddles-finger and Christy Crowdy, in which he was found guilty of burglary with intent to rape by day, a Class E felony, in 1984; burglary with intent to rape by day, a Class E felony, and assault with intent to rape, Class E felony, which he received five years. So we're relying on those three prior convictions to fulfill the requirement as a Range II offender.

MR. MOORE: Could I ask a question here, raise a question?

THE COURT: Yes.

MR. MOORE: Is it my understanding that the State after arguing with the Court that Mr. Nichols should be tried in reverse order, in essence having a number of subsequent rapes tried before the Pulley murder, is now asking the Court to sentence him in the other order, to impose the sentence first for the murder case and then impose the sentence for the other rapes? The State can't have it both ways.

MR. LANZO: We don't want to keep him alive for a hundred and twenty years and then execute him then. I think the priority would be---

MR. MOORE: Your Honor please, but the State can't have it both ways. The State argued successfully with this Court that the trials of those subsequent rapes should be tried first. He's entitled to be sentenced for those rapes first and he's entitled to serve that sentence.

MR. LANZO: Your Honor, I would like at this time---

MR. MOORE: The State argued that point and the State can't have it both ways.

MR. LANZO: What I would like is to go through this to just give the Court the idea of what the cases are, the potential sentences. And then if there's any objections we can argue those. But at this point, the purpose

in this is to show the ranges so defense counsel, defendant understands under the new law what his exposure is, and then we can debate whether they should be consecutive, whether they're these ranges or what.

But getting back to what I said, he would be a Range II under the law because he had three prior C felonies on the date of the guilty plea on 9-13-89.

As the Court is well aware, case No. 175497 was a companion case with Tami Roszell. It was a first degree burglary. Defendant also pled guilty on that same date. Same circumstances except it is a Class C felony. Would have been Range II because of the three prior C's. His exposure would be as a Range II multiple offender, 6 to 10 years at 35%.

After that trial was finished, Your Honor, it's the State's position there would be a new A and a new C added to the prior three C's.

So on the trials of Susan Tate, case No. 175433, 175442, these two charges; one aggravated rape and one grand larceny that occurred on 1-3-89, again defense counsel entered a plea after jury selection I believe on October 24th, 1989. Defendant pled as a Class A offense, aggravated rape. Now because of the further number of cases increased, he then moved up to a Range III. He would have had---I think it's five prior C's and A's, A's, B's

and C's. It brings him into Range III, a persistent
offender. His exposure would be on that Class A felony,
aggravated rape on Susan Tate, his exposure would be
between 40 and 60 years at 45%. And the grand larceny,
which was a plea to petit larceny, will be a Class E
felony, Range III, persistent offender, 4 to 6 years at
45%.

We then moved into the Patricia Ann Roach cases
in which there were four cases in the series of case No.
175438, 175440, 175492 and 178087. The reason because of
the large skip in the numbers is there was a substituted
indictment because of some---I think a flawed date and
maybe some language in the indictment. But those were
cases in which there were jury verdicts. On 1-11-90 there
was a jury verdict on all four cases, and he was found
guilty of Class A offense, aggravated rape. Now as you
will remember, we had three prior C's. We now have picked
up two A's because of these cases that have been finalized
by pleas. So now he moves into a career criminal. So the
Class A offenses, career criminal, aggravated rape, the top
end is 60 years at 60% as a career criminal. Subsequently
all these cases are career criminal. The jury verdict on
this attempted aggravated rape, where it was attempted anal
intercourse, is a Class B offense, career criminal, 30
years at 60%. And where he broke into the house with the

intent to rape, the burglary, it's a Class C felony, be a
career criminal, 15 years at 60%. And then the vaginal
intercourse and he struck her in the face and threatened to
kill her, again was aggravated rape, jury verdict as
charged, 60 year sentence on that particular case at 60%.

Next cases were the Patricia Ann Gore. The
defendant is a career criminal because of all the prior
convictions at this point. The unique thing about it is
he's becoming a double career criminal. He's moved up to
three prior A felonies, but he also has the six A, B and
C's. But on these cases, 180535, 536, 537, he was charged
with first degree burglary, petit larceny and aggravated
rape. Jury found him guilty of all the offenses as
charged. And as I've indicated, a Class C felony, 15
years, 60% exposure. Class E, larceny of the purse, jury
verdict, is a 6 year, 60%. Class A felony, as a career
criminal, 60 years at 60%.

And then the final Karen Pulley cases that were
companion cases with the murder case, the aggravated rape
and first degree burglary, the jury verdict of guilt. And
he is Class A defendant, career criminal, 60 years at 60%.
Class C offense, career criminal, 15 years at 60%.

It is our position, Your Honor, that that is the
law, those are the facts. And we've only presented these
exhibits, and we would move to make them as exhibits, or at

least copies of them, as really just defining the law and setting it up.

THE COURT: I think a copy of it would be very beneficial so we would make that an exhibit.

(Exhibit 2 marked and filed.)

MR. LANZO: Now relying on the facts that have been developed in all the trials enhancing factors do exist. The defendant has a history of criminal convictions and criminal behavior that's been shown by his own testimony, the prior records, and obviously the Court sitting here as the juries have rendered their verdicts.

The defendant treated or allowed the victims to be treated with exceptional cruelty during the commission of the offense. Need anything more be said than just the nature of the crimes and what the Court had to listen to about these victims and even the defendant's own testimony?

The personal injuries inflicted upon the victims were particularly great. I don't think it's even necessary to talk about this crime. We have one deceased, but beyond that the way he has tried through his behavior to destroy the lives of all these young women.

I find it objectionable to listen to defense counsel object to this. Some of the objections I can understand. Anybody can stand here and say the offense involved the victim and was committed to gratify the

defendant's desire for pleasure or excitement. Every one of these cases are anal intercourse, vaginal intercourse, fellatio, brutality. It was clearly for his gratification.

State will concede that history of unwillingness to comply with the conditions of a sentence involving release in the community. We'll not rely on that as an enhancing factor.

Defendant possessed and employed a deadly weapon during the commission of these. He used rope, gun, knife, 2x4, anything that he could use to brutalize these women psychologically, physically, anything that satisfied his pleasure.

The defendant had no hesitation about committing the crime when the risk to human life was high. The first one that he'll talk about after that is he kills someone and then commits the rapes and continues to commit rape and would continue to today if it wasn't for this action that we have here.

And during the commission of the felony the defendant willfully inflicted bodily injury on another person.

I think those factors, along with the statutory and case law is that these sentences should run consecutive to each other because of his history. We filed a motion and I don't have the statute in front of me right now. I

can't recite it but---

THE COURT: TCA 40-35-115 on multiple convic-
tions.

MS. BRYAN: Your Honor, I'm sorry, what did you say?

THE COURT: 40-35-115, multiple convictions.

MR. LANZO: No. 2 clearly applies. The defendant is an offender whose record of criminal activity is extensive. The defendant by his own testimony is a dangerously mentally abnormal person. If we want to concede his psychiatrist, that clearly fits.

The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk of human life is high.

It's clearly in my mind, Your Honor, in the years that I've prosecuted I have not seen a defendant---we wonder what laws are occurring in the legislature. We see changes and we sit back and we wonder why do they do this and why do they do that. And I say that's it's almost opening your eyes to see this defendant. The laws that we have, the prior convictions that are necessary to enhance punishment, the reasons for running sentences consecutive clearly were made for Mr. Nichols. It's almost as if this thing was dictated for him, for his behavior and what he

represents. And it is my position that on each of these
offenses, every single time that he raped, every time that
he broke into a home, every time he stole something from
these young girls, every time he did something for that he
should pay a price for it. If it means one day, it means
one hour, means one minute, he's responsible for it. And I
think that he should be sentenced to death, which he has.
And I think consecutive to that should be case No. 175495
for Tami Rozsell when he sexually abused her. He should be
sentenced to 40 years and get 35%.

In case No. 175497, when he took Tami Roszell and
he broke into her home, he ought to receive 10 years at
35%, consecutive to the previous case.

175433 with Susan Tate, aggravated anal penetra-
tion, aggravated rape, he should be enhanced as the law
says. And at that point he should received 60 years at
45%. And Susan Tate, when he stole from her, as minor as
it may seem, his actions in the whole picture, should be
consecutive and he should receive 6 years at 45%.

When Patricia Ann Roach had to go through what he
did to her, when he raped her, burglarized her home, and
raped her every way that he possible could, on each of
those cases he should receive the maximum sentence of 60
years at 60%, and they should each run consecutive to each
other and consecutive to all other crimes.

Patricia Ann Gore, when she had to be humiliated
by him, when she had to face his burglary, his theft and
his other actions against her, on each of those cases the
law says he's subject to 15 years and I know no reason it
should be anything less. I know no reason the percentage
should be any less. He should receive 15 years plus 6
years plus 60 years at 60%.

And Karen Pulley, it's obvious that these
sentences should run consecutive because who knows that
maybe in the future someone else may see fit to find there
should be something mitigating or some other problem with
it. But I think this defendant and this community should
hear a sentence totaling the number of years at the maximum
possible, to run each consecutive, and to make him do the
maximum amount of time. He's already demonstrated that our
system doesn't work to put him in and release him. We need
to put him in there and close the door for good.

THE COURT: All right. Ms. Bryan?

MS. BRYAN: Your Honor, Mr. Moore has a motion,
but I want to run through these specifically first for the
record.

On No. 175495, which is the second one on the
chart there, we would object specifically to the enhancing
factor of the use of a deadly weapon. In fact, he didn't
use a weapon in that case at all. There's no proof of it,

no even assertion of it.

Your Honor, on that case and on all of the remaining cases except for the last two on Karen Pulley, 175423 and 425, on all of these other listed cases except those two on Karen and the murder, we would ask Your Honor not to enhance any of these beyond multiple to persistent or career offender for the reason that we didn't receive the written notice required on that. We received notices on all of those but they were---we would ask Your Honor to dismiss those as moot because they were under the old code notices and they're not---they don't---I've gone through 'em all with some care and they just don't apply to this.

In addition, Your Honor, on, again, all of the cases with the exception of the numbers on Miss Pulley, we also received no notice of consecutive sentencing until December 12th, two days ago. We assumed up until that point that the State wasn't gonna ask for consecutive sentencing on all of these cases, other than on the Pulley cases. Therefore, Your Honor, that's not sufficient notice.

In addition, Your Honor, if you'd look on No. 175440, this is a case that was the---General has it listed as attempted intercourse. In fact, I believe, Your Honor, it was reduced to assault with intent to commit rape. I frankly don't know if that's a Class C offense or not.

THE COURT: Well, we'll have to pull that file
and be sure on that then. Yes, case 175440 was pled
attempt to commit aggravated rape. Wasn't it?

MS. BRYAN: It wasn't pled. I think what
happened, Your Honor, that's one of the cases that we tried
and you reduced it---

MR. LANZO: No, assault and battery is the other
one. He threw it out. There was another count. They came
back with assault and battery and the judge dismissed that
one.

MS. BRYAN: Right. But he reduced this one to
assault with intent to commit because there was a question
about it.

MR. LANZO: He couldn't do that.

THE COURT: My law clerk has checked. Her notes
on it was that case 175440, it'd be attempt to commit
aggravated rape, a Class B felony, and of course Range II
under the old law, which would've been 12 to 20 years. So
the minimum would be 12 and the maximum would be 20 instead
of 30 years. Maximum would be 20 years on that. Is that
the way you figure it?

MS. BRYAN: I don't know. I'm sorry, Your Honor,
I don't know. I didn't realize until right now that my
records said it was assault.

THE COURT: Well, since it was under the old

law---

MS. BRYAN: I don't have any question with that.

THE COURT: He would have the benefit of the lower sentence because the punishment is greater after November the 1st of '89. And the maximum for the offense of attempt to commit aggravated rape was 20 years. So instead of 30 it would be 20 years.

MS. BRYAN: Okay. I understand.

THE COURT: But it would still be---could be a career criminal.

MS. BRYAN: Okay. Your Honor, my objection on the fact that we didn't receive notice of consecutive sentencing is supplemented by right statute cite which is TCA 40-35-202, which as Your Honor knows, requires ten days notice for the State's seeking consecutive sentencing.

Your Honor, in addition, if Your Honor would look on No. 180535 and 536, cases relating to Ms. Gore. If Your Honor recalls, and I don't know the procedure you intend to take, but Your Honor stated at the time of trial, at the end of this trial, that you would merge these two cases because in fact he couldn't be found guilty of both.

THE COURT: That's in 175438 and 175---

MS. BRYAN: No, Your Honor. 180535 and 180536.

THE COURT: I had the wrong cases. All right, 180535 and 180536. That was first degree burglary and

petit larceny.

General, is there anything in your record to indicate that a notice was given of seeking consecutive sentencing prior to two days ago?

MR. LANZO:  I don't know that there's a require-ment for that.

MR. MOORE:  Yes, there is, Your Honor.

THE COURT:  Yes, under 40-35-202, he's got ten days notice.

MR. MOORE:  We have to get it ten days in advance.  We only got it two days in advance.

THE COURT:  If the District Attorney General believes that a defendant should be sentenced as a multiple, persistent or career offender, he shall file a statement thereof with the Court and defense counsel not less than ten days before.

MR. LANZO:  We're not asking for the---we've given them notice about the enhancement, but we didn't--- there's nothing in there about consecutiveness.

THE COURT:  I think you did give enhancement under the---

MR. LANZO:  Defense counsel's objection is that we've given so many over so long a period that they're just saying they---I say we've given them more than enough notice, plus the fact they're in court when the trials go

down. But there is no requirement, as I understand the law, for us to file a notice of consecutiveness although we did it and we've talked about it through our negotiations on other cases. We've been making oral discussions on what we were going to do with those compared to these.

THE COURT: The procedure that we have to follow now, you do have to give notice on multiple. But I think that what you did in the past is sufficient compliance. So I'm going to deny the defense motion on that and say that there has been sufficient compliance of notice of the State's seeking of enhanced punishment.

MS. BRYAN: How about, Your Honor, my separate motion on consecutive sentencing? That's the one that we only got two days ago.

THE COURT: I'm going to say that there is sufficient compliance by the State in giving you notice to where you were put on notice they would be seeking consecutive sentencing.

MS. BRYAN: Okay.

MR. MOORE: Your Honor, let me raise one other point that I discussed earlier, if I could, please.

THE COURT: Okay.

MR. MOORE: The State argued for the last months that it was constitutional---

THE COURT: Well, I'll save you the trouble. I'm

1   not going to run all the sentences consecutive to the death
 2   sentence for another reason.
 3         MR. MOORE:  That's my argument.  My argument is
 4   that the State cannot have it both ways.  The State can't
 5   say that it's constututional and proper to try him in one
 6   order and then come back and sentence him in another order.
 7   I would further point out to the Court that the State has
 8   put one of Miss Pulley's cases at the very first.  Then
 9   they've tried to put two over here at the end and have them
10   doubly enhanced, and he surely can't do that.
11         THE COURT:  I sincerely do appreciate the Attorney
12   General preparing the charts though that sets this out
13   because it does make it a lot easier for everybody to
14   follow.
15         MR. MOORE:  But that's the contention that I was
16   going to make.
17         THE COURT:  All right.  Anything else?
18         MR. MOORE:  I additionally think it's improper to
19   ---if the Court's not going to do what the State suggested,
20   then that removes my objection.
21         THE COURT:  That's going to take care of that.
22         What else?
23         MR. MOORE:  Nothing I can think of right now,
24   Your Honor.
25         MR. LANZO:  Nothing for the State, Your Honor.

THE COURT: All right. Then it's agreed that the sentences as set out in the charts---General, I believe that you will need to amend that one chart that's been made an exhibit to show 20 years maximum on that one case.

MR. LANZO: Yes.

THE COURT: And then the defense is urging the Court to merge 180535 and 180536, which the Court is going to do.

MR. MOORE: One more thing, Your Honor, to make sure that it's clear on the record, our contention.

THE COURT: All right.

MR. MOORE: The State never gave us notice pursuant to 40-35-202 that it was seeking---to quote the statute---we never got notice that the District Attorney believed that the defendant should be sentenced as a persistent or career offender, the last two of these things. We never got that notice. And so, therefore, we're contending that he can't be sentenced as a persistent or career offender.

THE COURT: I'm going to hold that there was substantial compliance by the State if I did not hold that. I do think there was sufficient compliance. I think you were really on notice that the State was going to seek the maximum punishment they could for every offense which has been their position all along on all cases that they've

taken that position, even where your client pled guilty in one case.  And the Court ruled that that encompassed the other count.  The State insisted on appeal and the Court of Appeals said that I should have given them an opportunity to try that.  So I think it's no question that the State was seeking the maximum punishment on every count of every offense.  Technically you may not have been given the notice, the ten days notice, but I believe that substantially you were put on notice.

The Court has considered the aggravating factors and enhancement factors in this case, and I've gone through those out of my handbook, and I've gone down to consider each one of them.  I did not take them from the pre-sentence report.

The defendant does have a previous history of criminal convictions.

The defendant treated or allowed victims to be treated with exceptional cruelty.

The personal injuries inflicted upon the victims was particularly great.  And there are personal injuries other than physical injuries.  And the injuries that were imposed, the emotional injuries imposed on these victims is something that hopefully they will get over but some may never get over.

The offense involved a victim and was committed

to gratify the defendant's desire for pleasure or excite-
ment. I think even the psychiatric testimony on behalf of
the defendant indicated that this was an act of violence
but it is for the defendant's pleasure or excitement.

The defendant used a deadly weapon in the commis-
sion of the offense, at least on some of the offenses.

The defendant had no hesitation about committing
a crime when the risk to human life was high.

The felony resulted in death or bodily injury.

So there are those enhancing factors.

The Court has considered each of the statutory
mitigating factors. The only one that could even remotely
be considered on behalf of Mr. Nichols is No. 8. The
defendant was suffering from a mental or physical condition
that significantly reduced his culpability for the offense.

The Court does not believe that Mr. Nichols was
suffering from such a mental or physical condition that the
Court can take cognizance of. In our society every
individual has to be responsible for the consequences of
their acts unless that person has been adjudged or deemed
to be incompetent, and there's no such adjudication in this
case.

I've considered No. 13. Any other factor con-
sistent with the purposes of this act.

Mr. Nichols was an abused, neglected child. He

was a child who grew up without any love or affection
except from what he got from the orphan's home or the
foster homes that he was in. But, again, he knew that he
was suffering from what he said was something he couldn't
keep from doing but yet he did not seek any help for that.

So the Court has considered the mitigating
factors. The Court has considered the enhancing factors.
The Court has also considered the provisions of the code
for multiple convictions as set out in 40-35-115, and
found that the defendant is an offender whose record of
criminal activity is extensive. He had the three prior
felonies, and then you have the fourteen victims involved
in this case, fourteen known victims involved. The
defendant is a dangerous offender whose behavior indicates
little or no regard for human life and no hesitation about
committing a crime in which the risk to human life is high.
The defendant's own psychiatrist testified that Mr. Nichols
should never be released from custody, that he would always
be a threat to society. So the Court finds that if there's
ever a case in which the maximum punishment should be set
it's in the cases involving Harold Wayne Nichols.

In case 175495, the Court finds that he is guilty
of a Class A felony, as a Range II offender. The Court
sets his punishment at 40 years.

In case 175497, the Court finds that he's guilty

of a Class C felony, as a Range II multiple offender. The Court sets his punishment at 10 years, and that 10 years is consecutive to the 40 years in the previous case.

Case 175433, the Court finds that Mr. Nichols is guilty of a Class A felony, as a Range III persistent offender. The Court sets his punishment at 60 years, which will be consecutive to the sentence in 175497.

In case 175442, the Court finds that Mr. Nichols is guilty of a Class E felony, as a Range III persistent offender. The Court sets his punishment at 6 years, and that is to be consecutive to the sentence in 175433.

In case 175438, the Court finds that he is guilty of a Class A felony, as a career criminal. The Court sets his punishment at 60 years in the Department of Corrections, and that 60 year sentence is consecutive to the sentence in 175442.

In 175440, the Court finds that Mr. Nichols is guilty of a Class B felony, as a career criminal. The Court sets his punishment at 20 years, and that 20 year sentence is consecutive to the sentence in 175438.

In 175492, the Court finds that Mr. Nichols is guilty of a Class C felony, as a career criminal. The Court sets his punishment at 15 years in the Department of Corrections, consecutive to the sentence in 175440.

In 178087, the Court finds that he is guilty of a

Class A felony, as a career criminal. The Court sets his punishment at 60 years in the Department of Corrections, consecutive to the sentence in 175492.

In case 180535, the Court finds that he is guilty of a Class C felony, as a career criminal. The Court sets his punishment at 15 years in the Department of Corrections, and that is consecutive to 178087.

The Court does merge the offenses in 180536 with that in 180535, so it would be no additional punishment.

In 180537, the Court finds that Mr. Nichols is guilty of a Class A felony, as a career criminal, and sets the punishment at 60 years in the Department of Corrections, consecutive to 180535.

In 175423, the Court finds that he's guilty of a Class A felony, as a career criminal. The Court sets his punishment at 60 years, consecutive to the sentence in 180537.

And in 175425, the Court finds that he is guilty of a Class C felony, as a career criminal. Sets his punishment at 15 years in the Department of Corrections, that being consecutive to 175423.

It has been the intent of the Court to set the maximum punishment allowed by the law in each of these cases because this Court has never seen in thirty-two years of experience any case in which the defendant more justly

deserves the maximum punishment as contemplated by the legislature.

These sentences are not ordered to be served consecutive to the death penalty sentence.

Both sides, of course, do have 30 days in which to perfect an appeal.

Anything further on the sentencing in these cases?

MR. LANZO: Nothing for the State, Your Honor.

MS. BRYAN: Your Honor, we'd like a transcript, please, prepared of this hearing.

THE COURT: Yes, the court reporter will prepare a transcript for you.

MR. MOORE: And, Your Honor, I want to make it clear again on the record that under 40-35-202, I stated that we hadn't gotten that---

THE COURT: Ten days, right.

MR. MOORE: That we hadn't gotten that notice. It also says that---

THE COURT: It was filed two days ago.

MR. MOORE: But it also says that it could be waived.

THE COURT: And you did not waive it.

MR. MOORE: We're not waiving anything under that statute.

THE COURT: I know you're not waiving at all. I'm finding that there was substantial compliance in the fact that you knew the State was seeking the maximum punishment in every case.

For the benefit of the victims and victims' families in the courtroom, as I indicated, I did not consider the victim impact statements. I read your state-ments. I did not consider those. I did not think it was necessary to consider those in setting the punishment in these cases because the Court heard the proof in these cases. The Court was prepared then to sentence without that. I'm really at a loss for words of what to tell the victims because in reading your statements there's no way I can really understand what you suffered. And the only thing I can do is hope that you get better.

Anything further?

MR. LANZO: Nothing for the State, Your Honor.

MR. MOORE: No, Your Honor.

END OF PROCEEDINGS

* * *

(SEE ENVELOPE ATTACHED)

Exhibit 1

        Identified and made a part of the record this
22nd day of January , 1991.

Douglas A. Meyer
        Judge

Exhibit 2

   Identified and made a part of the record this

_2nd_ day of ____January____ , 1991.

Douglas A. Meyer
   Judge



## Nichols, Harold Wayne



| Docket Number | Victim | Charge | Disposition | Facts | Range of Punishment |
|---|---|---|---|---|---|
| 175504 | Karen Pulley | 1st Degree Murder | 5/5/90 Jury Verdict - Guilty | 9/30/88 | Death |
| 175495 | Tami Roszell | Agg. Rape 39-2-603 | 9/13/89 Guilty Plea A/C | 12/27/88 - Sexual penetration - choked, threats to kill, struck with fist. | Class A Offense Range II (multple) 25-40 35% |
| 175497 | Tami Roszell | 1st Deg. Burg. 39-3-401 | 9/13/89 Guilty Plea A/C | 12/27/88 | Class C Offense Range II (multple) 6-10 yrs. 35% |
| 175433 | Susan Tate | Agg. Rape 39-2-603 | 10/24/89 Guilty Plea A/C | 1/3/89 - Anal penetration, knife and personal injury. | Class A Offense Range III (persistent) 40-60 yrs. 45% |
| 175442 | Susan Tate | Grand Larceny | 10/24/89 Guilty Plea Petit Larc. 39-3-1104 | 1/3/89 - Stole purse, gun, money | Class E Offense Range III (persistant) 4-6 yrs. 45% |

## Nichols, Harold Wayne

| Docket Number | Victim | Charge | Disposition | Facts | Range of Punishment |
|---|---|---|---|---|---|
| 175438 | Patricia Ann Roach | Agg. Rape 39-2-603 | 1/11/90 Jury Verdict Guilty A/C | 1/3/89 - Agg. Rape, fellatio. Struck with fist - threatened to kill V and children. | Class A Offense Career 60 yrs. 60% |
| 175440 | Patricia Ann Roach | Agg. Rape 39-2-603 | 1/11/90 Jury Verdict Guilty Att. Agg. Rape | 1/3/89 - Att. Anal intercourse | Class B Offense Career ~~Career~~ 20 yrs. 60% |
| 175492 | Patricia Ann Roach | 1st Deg. Burglary 39-3-401 | 1/11/90 Jury Verdict Guilty A/C | 1/3/89 - Broke in house w/intent to rape | Class C Offense Career 15 yrs. 60% |
| 178087 | Patricia Ann Roach | Agg. Rape 39-2-603 | 1/11/90 Jury Verdict Guilty A/C | 1/3/89 - Vag intercourse - struck with fist - threatened to kill V and children. | Class A Offense Career 60 yrs. 60% |
| | | | | | |

## Nichols, Harold Wayne

| Docket Number | Victim | Charge | Disposition | Facts | Range of Punishment |
|---|---|---|---|---|---|
| 180535 | Patricia Ann Gore | 1st Deg Burg. 39-3-401 | 2/21/90 Jury Verdict Guilty A/C | 12/21/88 - Res by night w/intent to commit larceny and rape. | Class C Offense Career 15yrs. 60% |
| 180536 | Patricia Ann Gore | Petit Larc. 39-3-1104 | 2/21/90 Jury Verdict Guilty A/C | 12/21/88 - Larceny of purse and knife | Class E Offense Career 6 yrs. 60% |
| 180537 | Patricia Ann Gore | Agg. Rape 39-2-603 | 2/21/90 Jury Verdict Guilty A/C | 12/21/88 - Vag Rape - Knife to throat. | Class A Offense Career 60 yrs. 60% |
| 175423 | Karen Pulley | Agg. Rape 39-2-603 | 5/5/90 Jury Verdict Guilty A/C | 9/30/88 - Vag Intercourse - assault w 2x4 | Class A Offense Career 60 yrs. 60% |
| 175425 | Karen Pulley | 1st Deg Burg. 39-3-401 | 5/5/90 Jury Verdict Guilty A/C | 9/30/88 - Broke in with intent to rape and murder. | Class C Offense Career 15 yrs. 60% |



CERTIFICATE

I, Dorothy M. Rogers, Official Court Reporter for the Eleventh Judicial District of the State of Tennessee, do hereby certify that the foregoing is a true, accurate and complete transcript, to the best of my knowledge and ability, of all the proceedings had and evidence introduced in the hearing of the captioned cause, in the Criminal Court for Hamilton County, Tennessee, on the 14th day of December, 1990.

I do further certify that I am neither of kin, counsel nor interest to any party hereto.

January 22, 1991.


_Dorothy M. Rogers_
Official Court Reporter
State of Tennessee